## CHESEBROUGH *v.* UNITED STATES.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 152.   Argued December 3, 4, 1903.—Decided January 25, 1904.

Texas paid voluntarily cannot be recovered back, and payments with knowledge and without compulsion are voluntary.

The purchase of stamps from a collector of internal revenue without intimating the purpose they are for, and without any protest made, or notice given, at the time, that the purchaser claims that the purchase is under duress, and the law requiring their use unconstitutional, is a voluntary payment, and a subsequent application to the commissioner to refund the amount is not equivalent to protest made, or notice given, at the time of the purchase.

Refusal by a vendee to accept a deed of conveyance without the stamps required by the war revenue act of 1898 is not such duress as relieves the vendor from making protest or giving notice at the time of the purchase to the collector from whom the stamps are purchased.

ROBERT A. CHESEBROUGH filed his petition in the District Court of the United States for the Southern District of New York, May 23, 1902, to recover the sum of six hundred dollars from the United States alleged to have been paid to the collector of internal revenue for the second district of New York for the purchase of certain internal revenue stamps to be affixed to a deed for the conveyance of real estate. Petitioner alleged that on May 28, 1900, he entered into an agreement with the Chesebrough Building Company to convey to that corporation certain real estate which he then owned and to execute and deliver a deed therefor on the fifth day of June, 1900. That on that day he made, executed and delivered to the corporation a deed of conveyance of the real estate and received the con-

sideration therefor. That at the time of the execution and delivery of the deed the act of Congress of June 13, 1898, "to provide ways and means to meet war expenditures, and for other purposes," was in force, which provided in part as follows:

"SEC. 6. That on and after the first day of July, eighteen hundred and ninety-eight, there shall be levied, collected, and paid, for and in respect of the several bonds, debentures, or certificates of stock and of indebtedness, and other documents, instruments, matters, and things mentioned and described in Schedule A of this act, or for or in respect of the vellum, parchment, or paper upon which such instruments, matters, or things, or any of them, shall be written or printed by any person or persons, or party who shall make, sign, or issue the same, or for whose use or benefit the same shall be made, signed, or issued, the several taxes or sums of money set down in figures against the same, respectively, or otherwise specified or set forth in the said schedule."

"Schedule A.

"Conveyance: Deed, instrument, or writing, whereby any lands, tenements, or other realty sold shall be granted, assigned, transferred, or otherwise conveyed to, or vested in, the purchaser or purchasers, or any other person or persons, by his, her, or their direction, when the consideration or value exceeds one hundred dollars and does not exceed five hundred dollars, fifty cents; and for each additional five hundred dollars or fractional part thereof in excess of five hundred dollars, fifty cents."

"SEC. 7. That if any person or persons shall make, sign, or issue, or cause to be made, signed, or issued, any instrument, document, or paper of any kind or description whatsoever, without the same being duly stamped for denoting the tax hereby imposed thereon, or without having thereupon an adhesive stamp to denote said tax, such person or persons shall be deemed guilty of a misdemeanor, and upon conviction thereof shall pay a fine of not more than one hundred dollars, at the discretion of the court, and such instrument, document,

or paper, as aforesaid, shall not be competent evidence in any court."

The petition then averred that "the Chesebrough Building Company, as was known to petitioner, was unwilling to accept the said deed of conveyance unless and until petitioner had placed thereon the stamps required by the aforesaid act, and that petitioner under compulsion of said law, and in order to receive from the purchaser the shares of stock named as the consideration for such conveyance, and in order to entitle such deed to be recorded under the provisions of said act, and to be received as evidence in the Federal Courts, as therein provided and in order to enable the petitioner to fulfill his aforesaid contract with said Chesebrough Building Company, to make, execute and deliver to said company a good and sufficient deed of conveyance of said real estate and premises, and in order to give to said company a good and clear title to said real estate and premises, free from doubt, did purchase from Charles H. Treat, the United States collector of internal revenue for the second district of New York, and place upon the said deed of conveyance stamps to the amount of six hundred dollars ($600) the proceeds of sale of which stamps your petitioner believes were thereupon by said collector paid over to the United States as required by law, and said moneys are now held by the United States."

It was further averred that prior to the institution of the action and in pursuance of the laws of the United States and the regulations of the Treasury Department in that behalf, petitioner made a written application on January 9, 1902, to the United States Commissioner of Internal Revenue for the refunding of the amount so paid by him for stamps as aforesaid, which application was denied. Petitioner then charged that the act was unconstitutional and void, and prayed judgment. To this petition a demurrer was filed on behalf of the United States, assigning the ground that the petition did "not state facts which would constitute a claim on the part of the claimant against the United States." The demurrer was sus-

tained and the petition dismissed, and this writ of error was thereupon allowed:

Sections 3220, 3226, 3227 and 3228 of the Revised Statutes are as follows:

"SEC. 3220. The Commissioner of Internal Revenue, subject to regulations prescribed by the Secretary of the Treasury, is authorized, on appeal to him made, to remit, refund, and pay back all taxes erroneously or illegally assessed or collected, all penalties collected without authority, and all taxes that appear to be unjustly assessed or excessive in amount, or in any manner wrongfully collected; also to repay to any collector or deputy collector the full amount of such sums of money as may be recovered against him in any court, for any internal taxes collected by him, with the costs and expenses of suit; also all damages and costs recovered against any assessor, assistant assessor, collector, deputy collector, or inspector, in any suit brought against him by reason of anything done in the due performance of his official duty: *Provided*, That where a second assessment is made in case of a list, statement, or return which in the opinion of the collector or deputy collector was false or fraudulent, or contained any understatement or undervaluation, such assessment shall not be remitted, nor shall taxes collected under such assessment be refunded, or paid back, unless it is proved that said list, statement, or return was not false or fraudulent, and did not contain any understatement or undervaluation."

"SEC. 3226. No suit shall be maintained in any court for the recovery of any internal tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until appeal shall have been duly made to the Commissioner of [*the*] Internal Revenue, according to the provisions of law in that regard, and the regulations of the Secretary of the Treasury established in pursuance thereof, and a decision of the Commissioner has been had therein: *Provided*, That if such decision

is delayed more than six months from the date of such appeal, then the said suit may be brought, without first having a decision of the Commissioner at any time within the period limited in the next section.

"SEC. 3227. No suit or proceeding for the recovery of any internal tax alleged to have been erroneously or illegally assessed or collected, or of any penalty alleged to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, shall be maintained in any court, unless the same is brought within two years next after the cause of action accrued: *Provided,* That actions for such claims which accrued prior to June six, eighteen hundred and seventy-two, may be brought within one year from said date; and that where any such claim was pending before the Commissioner, as provided in the preceding section, an action thereon may be brought within one year after such decision and not after. But no right of action which was already barred by any statute on the said date shall be revived by this section.

"SEC. 3228. All claims for the refunding of any internal tax alleged to have been erroneously or illegally assessed or collected, or of any penalty alleged to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, must be presented to the Commissioner of Internal Revenue within two years next after the cause of action accrued: *Provided,* That claims which accrued prior to June six, eighteen hundred and seventy-two, may be presented to the Commissioner at any time within one year from said date. But nothing in this section shall be construed to revive any right of action which was already barred by any statute on that date."

*Mr. Paul Fuller* and *Mr. F. R. Coudert, Jr.,* with whom *Mr. Henry M. Ward* was on the brief, for plaintiff in error :

This is a direct tax and is void because not apportioned. *Income Tax Cases,* 157, 158 U. S.; *Nicol* v. *Ames,* 173 U. S.

509; *Fairbank* v. *United States;* 181 U. S. 283; for definition of ownership see Austin on Jurisprudence, §§ 515, 518, 1103; Holland's Jurisprudence, 194. Alienability is not a less essential part of property than income or possession. It is a fundamental right, *United States* v. *Perkins,* 163 ·U. S. 625, whereas those of disposing or taking by testament are not fundamental. This differentiates *Magoun* v. *Trust Co.,* 170 U. S. 283; *United States* v. *Perkins,* 163 U. S. 625; *Knowlton* v. *Moore,* 178 U. S. 41. A general act making land inalienable would amount to depriving owners of property without due process of law. *Wynehamer* v. *The People,* 13 N. Y. 378. As to where taxes on sale of real estate fall, see Smith's Wealth of Nations, Art. 1, p. 685, and John Stuart Mill on Political Economy. For origin of stamp taxes, see Dowell's ·History, vol. II, p. 62, vol. III, p. 321, *et seq.* ·The tax has only been imposed once before in the United States in 1862, 12 Stat. 479. It was not included in the act of July 6, 1797, or that of August 2, 1813.

The Circuit Judge erred in the recent decision of *United States* v. *Thomas,* sustaining the constitutionality of tax on stock transfers. The argument that such a tax could not be apportioned would apply equally well to the income tax but did not find favor with the court.

The payment was not a voluntary one; the law presumes a payment made by threats or duress was not voluntary. · *Swift Co.* v. *United States,* 111 U. S. 22, 28. The treasury regulations did not require a protest but an application for a refund which was made. Provisions of Revised Statutes for refunding internal revenue taxes are remedial. *Savings Bank* v. *United States,* 16 C. Cl. 335, 348; affirmed 104 U. S. 728; *Kaufman's Case,* 11 C. Cl. 669, affirmed 96 U. S. 570. The protest in customs cases is not the protest required by common law *Elliott* v. *Swartwout,* 10 Pet. 137, 152; *Erskine* v. *Van Arsdale,* 15 Wall. 75. The petition alleges that the statutory and departmental regulations were complied with. The action was properly brought under the Tucker Act. *Dooley* v. *United States,* 182 U. S. 222.

· *Mr. Assistant Attorney General Purdy* for the United States:

The payment was purely voluntary and unless the Government confer the right to sue there can be no recovery. In this case there was no protest. Cooley on Taxation, 3d ed. p. 1495; *Elliott* v. *Swartwout,* 10 Pet. 137, 152; *Erskine* v. *Van Arsdale,* 15 Wall. 75; *Philadelphia* v. *Collector,* 5 Wall. 720, 730; *Real Estate Savings Bank* v. *United States,* 16 C. Cl. 335; *S. C.,* 104 U. S. 728; *Cheatham* v. *United States,* 92 U. S. 88; *Wright* v. *Blakeslee,* 101 U. S. 178; *Schmidt* v. *Trowbridge,* Fed. Cas. No. 12,468; *Stewart* v. *Barnes,* 153 U. S. 456; and see intimation in *Pollock* v. *Farmer's L. & T. Co.,* 157 U. S. 554, and cases cited in dissenting opinion, p. 606; *Pacific Steam Whaling Co.* v. *United States,* 187 U. S. 447, 453; *De Lima* v. *Bidwell,* 182 U. S. 1, 179.

The tax is an indirect and not a direct tax. The position of the Government on this point is set forth in the brief submitted on its behalf in *Thomas* v. *United States,* argued simultaneously with this case.

MR. CHIEF JUSTICE FULLER, after making the foregoing statement, delivered the opinion of the court.

The rule is firmly established that taxes voluntarily paid cannot be recovered back, and payments with knowledge and without compulsion are voluntary. At the same time, when taxes are paid under protest that they are being illegally exacted, or with notice that the payer contends that they are illegal and intends to institute suit to compel their repayment, a recovery in such a suit may, on occasion, be had, although generally speaking, even a protest or notice will not avail if the payment be made voluntarily, with full knowledge of all the circumstances, and without any coercion by the actual or threatened exercise of power possessed, or supposed to be possessed, by the party exacting or receiving the payment, over the person or property of the party making the payment, from which the latter has no other means of imme-

diate relief than such payment. *Little* v. *Bowers,* 134 U. S. 547, 554; *Railroad Company* v. *Commissioners,* 98 U. S. 541, 544; *Radich* v. *Hutchins,* 95 U. S. 210, citing *Brumagim* v. *Tillinghast,* 18 California, 265, a case in respect of stamps purchased, in which the subject is discussed by Mr. Justice Field, then Chief Justice of California.

In *Railroad Company* v. *Commissioners,* Mr. Chief Justice Waite, speaking for the court, said:

"There are, no doubt, cases to be found in which the language of the court, if separated from the facts of the particular case under consideration, would seem to imply that a protest alone was sufficient to show that the payment was not voluntary; but on examination it will be found that the protest was used to give effect to the other attending circumstances. Thus, in *Elliott* v. *Swartwout,* 10 Pet. 137, and *Bond* v. *Hoyt,* 13 Pet. 266, which were customs cases, the payments were made to release goods held for duties on imports; and the protest became necessary, in order to show that the legality of the demand was not admitted when the payment was made. The recovery rested upon the fact that the payment was made to release property from detention, and the protest saved the rights which grew out of that fact. In *Philadelphia* v. *Collector,* 5 Wall. 730, and *Collector* v. *Hubbard,* 12 Wall. 13, which were internal-revenue tax cases, the actions were sustained 'upon the ground that the several provisions in the internal-revenue acts referred to warranted the conclusion as a necessary implication that Congress intended to give the tax-payer such remedy.' It is so expressly stated in the last case, p. 14. As the case of *Erskine* v. *Van Arsdale,* 15 Wall. 75, followed these, and was of the same general character, it is to be presumed that it was put upon the same ground. In such cases the protest plays the same part it does in customs cases, and gives notice that the payment is not to be considered as admitting the right to make the demand."

The stamps in question were purchased from the collector of internal revenue for the Second District of New York, for the

purpose of affixing them to a deed of conveyance to the Building Company, but the collector was not informed at the time of the purchase of the particular purpose, and no intimation was given him, written or oral, that petitioner claimed that the law requiring such stamps was unconstitutional and that he was making the purchase under duress. The petition did allege that the Building Company was unwilling to accept an unstamped conveyance and that the stamps were thereupon affixed in order to complete the transaction and obtain the consideration, but if that constituted duress as between Chesebrough and his building company it was a matter with which the collector had nothing to do. On the face of the petition the purchase was purely voluntary and made under mutual mistake of law if the law were unconstitutional. But it is said that protest or notice would have made this payment involuntary, and that because something over nineteen months after the payment petitioner made "a written application" to the Commissioner of Internal Revenue for the amount he had paid for the stamps, the ordinary rule did not apply, inasmuch as such an application was "the statutory equivalent of a common law protest or notice of suit."

The reference is to section 3220 of the Revised Statutes, which provides that the Commissioner of Internal Revenue, on appeal to him, may remit, refund and pay back all taxes erroneously or illegally assessed or collected, or that appear to have been unjustly assessed or excessive in amount, or in any manner wrongfully collected; and also "repay to any collector or deputy collector the full amount of such sums of money as may be recovered against him in any court, for any internal taxes collected by him, with the costs and expenses of suit;" while sections 3226, 3227, and 3228 provide that no suit shall be maintained for the recovery of internal taxes alleged to have been erroneously or illegally assessed or collected "until appeal shall have been duly made to the Commissioner of the Internal Revenue;" or unless brought within two years after the cause

of action accrued; and that the claim for refunding shall be presented to the Commissioner within two years.

The words "until appeal shall have been duly made," appear to us to imply an adverse decision by the collector, at least a compelled payment, or official demand for payment, from which the appeal is taken.

In *Stewart* v. *Barnes*, 153 U. S. 456, this court treated the language as providing for "an appeal," and we think correctly. The opinion considered section 19 of the act of July 13, 1866, 14 Stat. 98, 152, c. 184, carried forward into section 3226, and section 44 of the act of June 6, 1872, 17 Stat. 230, 257, c. 315, from which sections 3227 and 3228 were drawn. We give them in the margin.[1]

---

[1] Sec. 19, Act of July 13, 1866:

"SEC. 19. *And be it further enacted,* That no suit shall be maintained in any court for the recovery of any tax alleged to have been erroneously or illegally assessed or collected, until appeal shall have been duly made to the Commissioner of Internal Revenue according to the provisions of law in that regard, and the regulations of the Secretary of the Treasury established in pursuance thereof, and a decision of said Commissioner shall be had thereon, unless such suit shall be brought within six months from the time of said decision, or within six months from the time this act takes effect: *Provided,* That if said decision shall be delayed more than six months from the date of such appeal, then said suit may be brought at any time within twelve months from the date of such appeal."

Sec. 44, Act of June 6, 1872:

"SEC. 44. That all suits and proceedings for the recovery of any internal tax alleged to have been erroneously assessed or collected, or any penalty claimed to have been collected without authority, or for any sum which it is alleged was excessive, or in any manner wrongfully collected, shall be brought within two years next after the cause of action accrued and not after; and all claims for the refunding of any internal tax or penalty shall be presented to the Commissioner of Internal Revenue within two years next after the cause of action accrued and not after: *Provided,* That actions for claims, which have accrued prior to the passage of this act, shall be commenced in the courts or presented to the Commissioner of Internal Revenue within one year from the date of said passage: *And provided further,* That where a claim shall be pending before said Commissioner the claimant may bring his action within one year after such decision and not after: *And provided further,* That no right of action barred by any statute now in force shall be revived by anything herein contained."

This petition did not set up any ruling of the collector, either specific or resulting from a demand to which petitioner yielded under protest or with notice, and from which he appealed to the Commissioner, but averred that he "made a written application" to the Commissioner to refund the amount he had paid.

We do not say that this was not sufficient to justify action by the Commissioner, but the averment as it stands is not equivalent to stating a previous adverse decision appealed from. The inference is that the application was a mere afterthought, and if an afterthought, the payment was voluntary.

The Commissioner might nevertheless have allowed the claim, and doubtless would have done so, in the interest of justice, if there were no particular circumstances to discredit it, and the law had been held unconstitutional by this court. But he rejected it, and petitioner was remitted to his suit in no different plight so far as his cause of action was concerned than if he had not sought the Commissioner at all.

In *United States* v. *Savings Bank*, 104 U. S. 728, it was held that the allowance of a claim by the Commissioner was equivalent to an account stated between private parties and binding on the United States until impeached for fraud or mistake, and that if not paid on proper application through the accounting officers of the Treasury Department, an action might be maintained on it in the Court of Claims, while if the claim were rejected, an action might be prosecuted against the collector. It was not, however, ruled that in the latter situation a recovery could be had if the original payment had been voluntary and without objection.

It is one thing for the Government to correct mistakes, return overcharges, or refund amounts exacted without authority, when satisfied such action is due to justice, and quite another thing for the Government to be compelled to repay amounts which in its view have been lawfully collected.

By section 3220 authority is given and opportunity afforded to do what justice and right are found to require, and the conditions which govern contested litigation may well be regarded

as waived, but it does not follow that there is any statutory waiver of such conditions when the Government is proceeded against *in invitum.*

As we have said the purchase of these stamps was purely voluntary, and if, notwithstanding, recovery could be had, it could only be on protest or notice, and there was none such here, written or verbal, formal or informal.

It is argued that the provisions of section 3220 for the repayment of judgments against the collector rendered protest or notice unnecessary for his protection, but it was clearly demanded for the protection of the Government in conducting the extensive business of dealing in stamps, which were sold and delivered in quantities, and without it there would not be the slightest vestige of involuntary payment in transactions like that under consideration. And we find no right of recovery, expressly or by necessary implication, conferred by statute, in such circumstances.

*Judgment affirmed.*