NEWHALL v. JORDAN, Collector of Internal Revenue.

(Circuit Court, E. D. New York. December 6, 1906.)

1. INTERNAL REVENUE—ARTICLES SUBJECT TO TAX—BAY RUM IMPORTED FROM PORTO RICO.

Bay rum not being subject to internal revenue tax, and imports from Porto Rico not being subject to customs duty, but to internal revenue tax, as "like article of merchandise of domestic manufacture," bay rum imported from Porto Rico is not as such subject to tax nor can it be theoretically resolved into its component parts for the purpose of imposing an internal revenue tax upon the distilled spirits which enter into its composition.

2. SAME—RECOVERY OF TAXES PAID—VOLUNTARY PAYMENT.

An importer of goods from Porto Rico, who formally entered the same and purchased stamps from the collector for payment of internal revenue tax thereon, as required by the treasury department, without protest or objection, and in the belief that such tax was lawfully due, must be regarded as having made the payment voluntarily, and cannot recover it back, although the goods were not lawfully taxable, and it is conceded that under the rulings he could not have obtained possession of the same without making the payment.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 29, Internal Revenue, §§ 83, 84.]

John David Lannon, for plaintiff.
William J. Youngs, U. S. Atty., for collector.

THOMAS, District Judge. This action involves the question whether bay rum imported from Porto Rico was subject to a tax upon the distilled spirits that entered into its composition, and whether the purchase of stamps of the Internal Revenue Commissioner, for the purpose of paying the tax, while the merchandise was detained by the government at the port of entry, without dissent, controversy, or protest, precludes the plaintiff from maintaining this action. The import duty imposed on imports from Porto Rico by the Foraker act (passed April 12, 1900)· Act April 12, 1900, c. 191, 31 Stat. 77, was terminated by the authorized proclamation of the President, but such imports remained subject to the internal revenue tax as "like articles of merchandise of domestic manufacture" were subject. But domestic bay rum, as such, was subject to no internal revenue tax. Therefore, the letter of the statute authorized no tax on bay rum. But the govern-

ment in effect urges that while domestic bay rum is subject to no tax, the distilled spirits that enter into it are subject to a tax; and that as the rum blended in bay rum of Porto Rican manufacture, and thence exported, is subject to no tax at home, it will escape all tax, unless the government, upon the arrival of the article in the United States, theoretically resolve it into its component parts, and tax the parts as if they had arrived, each in its own peculiar form, before all were merged into the article known as bay rum. It is further urged that any other rule would allow distilled spirits to be brought to the United States from Porto Rico, under the guise of bay rum, with resulting injury to the revenue and the domestic distillers.

To this last objection, it seems an obvious answer that the mere fact that there is an omission in the law, if there be such, does not authorize the court to amplify the statute; and it is quite as noticeable that the fraudulent importer must distil the spirits from the bay rum to gain the advantage of his fraud, and that, should he do so, his product would become subject to the domestic tax. But, even otherwise, the hardships of the case cannot authorize the interpolation of words in the statute. The article is genuine bay rum, intended for honest use as such. It can only be taxed at the sum imposed on bay rum in the United States. There is no such tax. Hence there is none on the imported article. The statute should be interpreted according to the plain meaning of the words, and as men of ordinary intelligence, called upon to obey it, would understand its direct and simple language. The importer of articles from Porto Rico could not and should not understand from the law that every article imported from Porto Rico must be resolved into its component parts, each element scrutinized, and taxed as a separate and distinct article of domestic manufacture. There seems to be no justification for this nonobservance of the letter of the statute, save the plea of inconvenience and opportunity to defraud the revenue. Such considerations appeal to the lawmaker rather than to the court. But it is urged that the plaintiff paid the tax voluntarily, and that he may not recover the sum paid. The plaintiff's importations herein involved arrived as follows, the first importation, September 9, 1901, the second importation, July 30, 1902. It is conceded as a fact:

"That the Treasury Department at the times the duties herein were paid, as a matter of common knowledge, was insisting and had insisted upon payment of an internal revenue tax upon bay rum imported from Porto Rico as distilled spirits, and had refused to refund money paid as internal revenue tax upon such bay rum from July 26, 1901."

The following facts are stipulated:

"(23) That upon the arrival of the steamship at the port of New York the defendant being such collector of internal revenue for the First district of New York, did, through the exercise of the powers and authority in him vested for the performance of his duties as collector detain the said packages or barrels of bay rum, claiming that the said bay rum was taxable or dutiable under the provisions of the act of Congress of April 12, 1900, entitled 'An act temporarily to provide revenue and a civil government for Porto Rico and for other purposes,' commonly called the Foraker bill.

"(24) That thereupon plaintiff in compliance with certain regulations of the Secretary of the Treasury of the United States and on printed forms

prescribed thereby for such purposes, notified the defendant, the collector of internal revenue for the First district of New York, of the arrival of the said packages or barrels of bay rum and of his desire to remove the same, and requested that the said bay rum be inspected and gauged in compliance with such regulations. That plaintiff could not have obtained possession of the bay rum without giving the aforesaid notice and making the aforesaid request.

"(25) That thereupon the defendant as such collector as aforesaid instructed one of the United States gaugers of spirits to inspect and gauge the said packages or barrels of bay rum.

"(26) That subsequently and on or about September 14, 1901, the said United States gauger of spirits, acting in compliance with the aforesaid instructions, gauged the said bay rum and made a report thereof and a return.

"(27) That thereafter the plaintiff, in compliance with the regulations of the Secretary of the Treasury of the United States as aforesaid, and on printed forms prescribed thereby for such purposes, and compelled to do so in order to obtain possession of the said packages or barrels of bay rum made an entry for the removal of the said bay rum.

"(28) That the defendant collector as aforesaid determined that the said bay rum was subject to a tax or duty of $1,052.48, and on or about September 16th, 1901, did, through the exercise of the power and authority in him vested for the performance of his duties as collector, demand and collect from the plaintiff the sum of $1,052.48, which sum the plaintiff paid in order to obtain possession of the packages or barrels of bay rum aforesaid which the defendant was detaining from him and which he would not have delivered to him except upon the plaintiff's paying to him the sum of $1,052.48, for tax paid stamps to be affixed to the packages or barrels of bay rum, and the payment of the said sum was a condition precedent to the delivery thereof to the plaintiff; that the plaintiff purchased the stamps and paid the tax as aforesaid and in the manner prescribed and did not obtain the bay rum until the payment of the said sum as aforesaid."

The stipulation as to the second importation is the same, except as to the dates and the amount paid. It is further stipulated:

"(29) That thereafter and on or about August 4, 1903 the plaintiff made an application in writing to the United States commissioner of internal revenue to remit, refund, and pay back to the plaintiff the alleged tax, upon the ground that the said alleged assessment and said tax and the exaction and payment thereof were illegal, null and void and of no binding force and effect for the following reasons."

Thereupon the reasons are stated.

It is further stipulated:

"(30) That the United States commissioner of internal revenue did finally on or about the 27th day of July, 1904, deny and reject the application or claim of this plaintiff for the refunding of the said alleged tax and did refuse to remit or refund the said alleged tax or any part thereof, and did send to the defendant, as such collector a written notice of such rejection and the defendant as such collector on or about the 25th day of February, 1905, did cause to be served upon this plaintiff a written notice of such denial and rejection."

The plaintiff at the time of bringing suit was in the same position as if he had not instituted proceedings before the commissioner, so far as the question of voluntary payment is concerned. Chesebrough v. United States, 192 U. S. 253, 263, 24 Sup. Ct. 262, 48 L. Ed. 432. It is true that his property was detained, but the detention was on the theory that it was subject to the payment of the tax. Had there been no detention, and there had been payment, with or without protest, or acts or words equivalent thereto, the payment would have been voluntary. Chesebrough v. United States, supra. But, when

property arriving in the country passes through the various channels that are necessary to the determination of the question of its taxation, and the importer himself pursues the law, and does, without dissent or suggestion of oppression or duress, whatever is necessary to procure his goods, he makes his own interpretation of the law. And if he interpret it mistakenly, there seems to be no rule that allows him at one time to affirm its application by his action, an affirmance unmodified by word or deed, and thereafter disaffirm the subjection of his merchandise to the statute. It is a payment under mistake of law, for which no relief exists. This conclusion accords with the opinion of the court in Chesebrough v. United States, 192 U. S. 259, 24 Sup. Ct. 264, 48 L. Ed. 432, where it is said:

"The rule is firmly established that taxes voluntarily paid cannot be recovered back, and payments with knowledge and without compulsion are voluntary. At the same time, when taxes are paid under protest, that they are being illegally exacted, or with notice that the payer contends that they are illegal and intends to institute suit to compel their repayment, a recovery in such a suit may, on occasion, be had, although generally speaking, even a protest or notice will not avail if the payment be made voluntarily, with full knowledge of all the circumstances, and without any coercion by the actual and threatened exercise of power possessed, or supposed to be possessed, by the party exacting or receiving the payment, over the person or property of the party making the payment, from which the latter has no other means of immediate relief than such payment. Little v. Bowers, 134 U. S. 547, 554, 10 Sup. Ct. 620, 33 L. Ed. 1016; Railroad Company v. Commissioners, 98 U. S. 541, 544, 25 L. Ed. 196; Radich v. Hutchins, 95 U. S. 210, 24 L. Ed. 409, citing Brumagin v. Tillinghast, 18 Cal. 265, 79 Am. Dec. 176, a case in respect of stamps purchased, in which the subject is discussed by Mr. Justice Field, then Chief Justice of California."

The parties stipulated "that the plaintiff could not obtain the bay rum so imported by him except by paying the duties."

It may be urged from this conceded fact that a protest would have been unavailing, but such suggestion does not go to the root of the difficulty. The stipulation may be broad enough to mean that the plaintiff could not have gotten his goods without paying the tax, whatever he might have done. But the fact remains that there is no evidence whatever that he regarded his goods as in duress, or that they were not taxable, or that he did not regard himself as the lawful debtor to the United States. The stipulation indicates that the government believed that the goods were dutiable, and would have insisted upon the payment. The history of the case shows, that the plaintiff also regarded the goods as dutiable, and, so far as appears, willingly made the payment. It was no mistake of fact, it was a pure mistake of law. The proposition of the plaintiff is that every person buying stamps of a collector, for the various uses pointed out by statutes, may do so without any objection whatsoever, and thereafter state that he did not pay according to a valid or applicable law, and recover the tax should the taxing law prove inapplicable. No fact shows that the plaintiff was conscious of duress or unlawful constraint to pay what he did not owe to union his property. His whole conduct before payment, and from September 9, 1901, as regards the first importation, and from July 30, 1902, as regards the second importation, to August 4, 1903, indicated perfect acquiescence and affirmance of the law. It is difficult

to. understand how taxes may be raised by a stamp duty, if the purchaser when buying or using makes no indication of dissent from the obligation that is asserted against him.

The defendant should have judgment.