### VAUGHAN et al. v. RIORDAN, Internal Revenue Collector.

(District Court, W. D. New York. October 17, 1921.)

1. **Internal revenue** ⬡—8—Evidence held to rebut presumption gift of bonds nine days before death was in contemplation of death.

Evidence that a husband, in order to reduce his income tax, had intended for some time to give his wife bonds, from whose income he paid her allowance, and that he executed the gift while recovering from an attack of pneumonia, but after he had been pronounced out of danger, *held* sufficient to rebut the presumption created by Revenue Act 1916, § 202(b), that a transfer without consideration made within two years of death was made in contemplation of death, though within a few days after executing the gift the husband was attacked by a new disease and died within nine days thereafter.

2. **Internal revenue** ⬡—8—Gift of bonds to wife held not to pay household expenses for which donor was chargeable.

Where a husband gave to his wife bonds, the income of which he had previously paid her for maintenance of the household, to relieve him of the income tax on such bonds, but did not restrict the use of the income from the gift to the payment of household expenses, and continued thereafter to give his wife money required in addition to the income from the bonds for the payment of such expenses, the bonds were not taxable as part of his estate on the theory they were still to be used for the payment of obligations of the husband.

3. **Internal revenue** ⬡—38—Application of rebate on other taxes to tax on omitted bonds is not voluntary payment by taxpayer.

Where the executors of an estate had paid an estate tax on an amount which included a testamentary gift to a library, the fact that the collector, on making a rebate of the tax because of such gift, applied an amount of the rebate to the payment of the tax on bonds given by testator to his wife which the executors protested against paying, did not make the payment of the tax on the bonds voluntary to the extent of such application so as to prevent recovery by the executors, since the act of the collector in making such application of the rebate was unauthorized, arbitrary, and coercive.

At Law. Action by William W. Vaughan and another, as executors of the will of William Austin Wadsworth, deceased, against Vincent

H. Riordan, as United States Internal Revenue Collector for the Twenty-Eighth District of New York. Judgment directed for plaintiffs.

Kenefick, Cooke, Mitchell & Bass, of Buffalo, N. Y. (Romney Spring, of Boston, Mass., of counsel), for plaintiffs.

Stephen T. Lockwood, U. S. Atty., and John H. O'Day, Asst. U. S. Atty., both of Buffalo, N. Y. (Carl A. Mapes, Solicitor of Internal Revenue, and Newton K. Fox, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for defendant.

HAZEL, District Judge. This is an action by the executors of the will of William Austin Wadsworth, deceased, to recover from Vincent H. Riordan, collector of internal revenue, federal estate taxes amounting to $38,310, with interest, illegally collected under the acts of March 3 and October 3, 1917. The principal question is whether a gift of bonds of the admitted value of $273,649.17, made by the deceased to his wife nine days before his death, is properly included as part of his gross estate under section 202 (b) of the act of 1916 (39 Stat. 777) as a gift "made in contemplation of death." The parts of the statute involved herein provide for imposing a tax on the transfer of the net estate of every person dying after the passage of the act, and, after specifying the manner of determining the gross estate, reads:

"(b) Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such a consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title."

The salient facts as proven at the trial are as follows: Maj. Wadsworth died on May 2, 1918, at the age of 71 years, and the value of his estate approximated $2,500,000, not including the bonds which are the subject of this controversy; and thereafter, on November 25, 1918, his executors filed an estate tax return with the commissioner and paid a tax of $249,475.51. The bonds transferred to his wife were not included in the tax return, but, had they been, the estate tax would have been larger by the amount of $38,310.89. There was an overpayment of $9,294.12 on the tax paid by the executors, arising from a deduction or allowance of a testamentary gift to the Wadsworth Library amounting to $100.000. The commissioner retained the overpayment, applying it on the tax which he claimed the estate owed for the gift of the bonds to Mrs. Wadsworth. The executors protested, and the additional balance required by the commissioner was paid, and this action brought for a refund of the amount assessed on the bonds.

[1] I find there is no substantial evidence that the transfer or gift in question by the deceased was in contemplation of death within the meaning of the statute, but that in fact it was given in good faith and at a time when the deceased had no expectation or anticipation of death in either the immediate or reasonably distant future. The evidence discloses the state of mind of the deceased long before the consummation of the gift as well as at the time thereof. It is shown that he had been afflicted with diabetes for a period of 20 years, and up to the time of his

death was continuously treated therefor by physicians of skill and experience. The disease was controlled from time to time, and Maj. Wadsworth's general health throughout was regarded as good notwithstanding his affliction and the inconvenience resulting therefrom. In March, 1918, he had pneumonia and bronchitis, which required the active attention of his physician and nurse, but his recovery was confidently assured; indeed, he was free from the effects of pneumonia and bronchial disturbance on April 23, the date when the bonds were transferred in writing—the writing being prepared by his counsel—and delivered to Mrs. Wadsworth. But two days afterwards he was seized with a streptococcus infection of the throat which admittedly aggravated his diabetic condition and caused his death. At various times in February and March, 1918, he was visited by his bookkeeper at his home in Boston for the purpose of obtaining counsel and assistance in making out income tax returns, and in relation to the affairs of the Wadsworth estate, comprising more than 16,000 acres of farm land in Livingston county, N. Y. At such times he spoke of future repairs that were to be made on the estate, and on an occasion in April he remarked cheerfully to his bookkeeper that he would see him in Geneseo the ensuing week. At such times, as the witness Sutton testified, Maj. Wadsworth looked well and was in apparent good spirits. At his request he prepared a list of securities which were afterwards transferred. Mrs. Wadsworth testified that her husband had long intended giving her the securities or their equivalent; that he had been giving her an allowance of $1,000 a month to partly meet household expenses, additional amounts being used from her independent income of $15,000 a year. At various times, she testified, prior to her husband's death, he stated that he intended giving her the securities from which the monthly allowances were made, and later, when the income taxes increased by surtaxes, he said he believed it wiser that she should have the principal for her own use, and he would discontinue the monthly allowance. He several times recurred to the subject, always saying that he intended turning the bonds over to her. In February, 1918, the list of bonds which had previously been obtained from his bookkeeper was given by the deceased to his counsel, with instructions to prepare an assignment to his wife, saying that he meant to give her enough bonds to cover the $12,000 he was annually giving her for household expenses, and that he did not wish to pay an income tax any longer on the securities from which the dividends were derived that were applied to her allowance. Similar statements had previously been made by him to his bookkeeper, and in October, 1915, when an allowance was payable, he again said to the bookkeeper that he intended giving Mrs. Wadsworth the bonds outright, and then he would not have the trouble of making deposits in the bank for her. There was an evident desire to consummate the gift before his illness, and I have no doubt but that it would have been consummated earlier in the year if his counsel had not been on a southern trip and absent from the city for some time. The annual income tax paid by the deceased amounted to about $18,000 on an income of from $65,000 to $100,000 a year, while that of his wife varied to an amount not exceeding $200, and he frequently

stated that he wished to equalize these payments, and therefore would transfer the bonds. At the time of the transfer he had made a good recovery from his illness. He was feeling well and had substantial assurances of recovery from his attending physician. It is true he had reached the age of 71 years, and perhaps would not have lived many more, and he had just recovered from a severe illness, but his usual strength was coming back and he entertained no thought of death. Indeed, no reason existed for thinking that he would be attacked with a streptococcus throat. No symptoms were noticeable, though his sputum had been analyzed. His attack was unexpected. His physician, Dr. Brigham, had discontinued his visits and had assured him on March 18 that he was out of danger, his nurse was planning to accompany him on a trip to his country home at Cotuit before discontinuing her services, while he was planning future activities of one kind or another at Geneseo, as the testimony of Senator Wadsworth, who visited him at Boston during his illness, shows. The idea of defrauding the government out of a comparatively small amount of the inheritance tax, when presumably he knew that his estate would be required to pay a very large sum, to wit, $249,475.51, to my mind is inconceivable, and any presumption arising under the statute that the gift was made in contemplation of death is, I think, fairly overcome by the existing facts and circumstances.

[2] The government next contends that, if it is found as a fact that the bonds in question were transferred so that Mrs. Wadsworth received the income therefrom for household expenses and to relieve him of the burden of paying them and including them in his income tax returns, then the gift is nevertheless taxable as part of his estate, since it was to take effect after the donor's death. This contention is based upon the theory that Maj. Wadsworth maintained the household, and the securities were to be used to pay his own indebtedness. But I think that the gift was not in the nature of a reservation of income from the bonds to his own uses, since the gift was absolute, unaccompanied by any conditions or reservations. Mrs. Wadsworth testified that the income from the bonds was insufficient to pay the household expenses, and she used about $15,000 additional from her independent income, but that, whenever she required more money, her husband gave it to her, and there was no understanding that the income from the bonds should be used in a particular way. Hence I am of the opinion that article 34, regulation 37, does not apply.

[3] It is next contended that the amount of $9,294.12, which had admittedly been erroneously paid by the plaintiffs, cannot be recovered in this action, since it was not originally paid under protest, and hence it was a "voluntary payment" as that term is defined in Chesebrough v. U. S., 192 U. S. 253, 24 Sup. Ct. 262, 48 L. Ed. 432. The law clearly is that, unless a tax is paid under duress or compulsion and under protest made at the time of payment that it is being illegally exacted, there can be no recovery. In this case, however, the amount erroneously paid, as shown in the original return, was not in my opinion a voluntary payment of the tax on the bonds. The deputy commissioner's review and audit shows the amount to have been a reduction from

the estate tax payment, but I do not understand by what right he applied it to payment of taxes on bonds not specified in the original return. His disposition in this relation was, I think, unauthorized, arbitrary, and coercive. A demand by the commissioner for payment of the taxes on the bonds is included in the review and audit, and upon subsequent payment of the amount therein claimed to be due and owing (Exhibit D) the protest as to its legality was properly made. It may be that, if the government had not made a reduction on account of the bequest to the library at Geneseo, the payment by plaintiffs under their original return without demand would be held a voluntary payment and recovery barred, but the amount retained and irregularly applied without the consent of the plaintiffs and under their protest when they paid the tax exacted does not come under the principle of the adjudications cited in defendant's brief.

The plaintiffs, in my opinion, are entitled to judgment against the United States internal revenue collector for a return of the tax illegally assessed on the bonds in question and paid by the plaintiffs under protest.

A decree may be entered, with costs.