THE B & B NO. 5 et al.

IRA S. BUSHEY & SONS, INC., v.
THE B & B NO. 5 et al.,
No. 17343.

District Court, E. D. New York.
March 8, 1947.

Foley & Martin, of New York City (Christopher E. Heckman, of New York City, of counsel), for libelant.

Horace M. Gray, of New York City, for W. E. Hedger Transportation Corporation.

BYERS, District Judge.

Hearing on Petition to open consent decree of March 8, 1945, in this Admiralty cause of foreclosure of preferred mortgages covering many named barges and vessels, pursuant to the decision of the Circuit Court of Appeals, Second Circuit, reported in 155 F.2d 321 in the case of W. E. Hedger Transportation Corporation et al. v. Ira S. Bushey & Sons, Inc., a Civil cause then designated as Civil 5179 on the calendar of this Court.

The appellate court reversed a judgment of dismissal and directed that the complaint be "treated as a petition in the foreclosure suit to vacate the decree of foreclosure upon the grounds which it alleges", except as to the allegations of the 67th, 68th, and 69th Articles, as to which the judgment of dismissal was affirmed.

The complaint will hereinafter be called the Petition. It alleges matters touching the proceedings in the Admiralty cause in which it is now filed, which will be stated, after pausing to observe that the said proceedings were not included in the record before the Circuit Court, as they will be in an appeal from this decision.

The Court did not pass upon the sufficiency of the Petition as a pleading. See

page 325 of 155 F.2d as follows: "* * * the cause will be remanded with instructions to treat the complaint as a petition in the foreclosure suit to reopen the decree upon the grounds therein alleged, *on whose sufficiency, however, we are not to be understood to pass*". (Emphasis supplied.)

This cause was begun on February 10, 1945, by the filing of a libel in a cause of foreclosure of preferred mortgages, against 35 named barges, their tackle, apparel, etc., and W. E. Hedger Transportation Corporation (hereinafter to be called Hedger Co.)

It contains 24 Articles to the effect that the libelant acquired a preferred mortgage executed and delivered by respondent Hedger Co., dated March 21, 1939, and given to secure the payment of its 41 promissory notes totaling $600,000 and interest; that, as the result of a series of events which are recited, there was due to the libelant $60,700 of principal and $3,066.66 of interest, together with reasonable attorneys' fees of approximately $10,000, amounting in all to $73,766.66.

Process was prayed against the vessels named, and condemnation and sale thereof, and that the preferred mortgage be declared a valid and subsisting lien prior to other liens, etc., and that in default of payment of the sums found due that all persons, etc., be barred and foreclosed of any right or equity of redemption, and that judgment be had against respondent for the amount of libelant's just claim; and that the Court direct the manner in which notice be given to the Master, caretaker, etc., of the vessels proceeded against. (An order was made pursuant to the latter prayer.)

The respondent claimed the vessels, and filed an answer on February 21, 1945, and the denials for present purposes may be considered as raising the issue of good, valid and adequate consideration for the notes and the preferred mortgage, and whether the respondent was indebted to the libelant; and that to the extent that the notes were valid obligations, they had been paid.

Article Twenty-sixth contains the defense, and covers nearly six typewritten pages. It recites in substance the same matters as are comprehended in paragraphs Sixth to Twenty-sixth, inclusive, of this Petition; namely, the history as alleged of the joint adventure entered into about July 30, 1932, by William E. Hedger, and Francis S. Bushey and Raymond J. Bushey, the president and treasurer and principal stockholders of Ira S. Bushey & Sons, Inc., which corporation is named as defendant in the Petition, while the Hedger Co. and William E. Hedger are designated plaintiffs. (The corporate defendant is the libelant in this cause.)

The relief prayed in the answer, in addition to dismissal of the libel, is that the proceedings except to appoint receivers be deferred until the conclusion of the accounting action (referred to below) in the State court, and that a joint receiver with William E. Hedger be appointed pursuant to 46 U.S.C.A. § 952, to operate the vessels, the proceeds to be impounded to the amount demanded in the libel; that a Special Master be appointed to take an accounting (if the Court determines to proceed notwithstanding the State court action), and $600,000 damages.

This Petition alleges in paragraph Fifth that on December 21, 1944, the plaintiffs commenced a civil action in the New York State Supreme Court against the defendant corporation, the two Busheys, and certain subsidiary corporations, to compel an accounting of monies and properties of the plaintiff corporation "delivered to the defendant, its said officers and such subsidiaries, in amount in excess of $1,000,000 between the 30th day of July, 1932, and the 21st day of December, 1944, pursuant to an agreement of joint adventure * * * between the plaintiff, William E. Hedger, and the said Francis S. Bushey and Raymond J. Bushey"; and that the action was then (April 3, 1945) pending and undetermined.

A copy of the complaint in that action was to be offered and produced in the trial of the civil cause (in which the Petition was filed as a complaint).

Thus it appears that the purported facts as to the financial relations of the parties, and upon which the petitioner in part now relies, were known to it as early as December 21, 1944, or about 52 days prior to the filing of the libel for foreclosure of the

preferred mortgage; that is, the alleged facts did not come to light after the entry of the consent decree of March 8, 1945.

■ The order on mandate was signed December 10, 1946, and pursuant to a provision thereof, on December 18, 1946, a matter appeared upon the calendar of Judge Kennedy holding the Motion Term, entitled "Hearing on petition to vacate decree of foreclosure". The Petition bears this endorsement: "Respectfully referred to Judge Byers. Dated December 18, 1946. Harold M. Kennedy, U.S.D.J.", which was appropriate since the consent decree was signed, and the court proceedings in connection therewith were conducted, by him as the Judge holding the Admiralty part in the month of March, 1945.

This motion was argued and submitted on January 13, 1947, and both sides were given until the 23rd to submit briefs, later extended to February 10th.

On that day, briefs were filed, and in that of the Hedger Co. the following occurs: "* * * (it) therefore objects to any disposition thereof (the Petition) in this informal manner upon the ground, among others, that this proceeding does not constitute due process of law", which follows the assertion "that there is no motion before the Court addressed to the bill of complaint which the Circuit Court of Appeals has directed be treated as a petition in the admiralty action".

■ The duty of complying with the direction of the Circuit Court is a sufficient reason for this Court to act, sua sponte if need be.

■ The present inquiry is directed to the sufficiency of the Petition as a pleading, not to the propriety of signing the consent decree, which disposes of any question of the possible disqualification of the Judge, if that had been urged at the argument, which it was not.

■ It is alleged, however, that the case should not have been called for trial at all. If, for the moment, the soundness of that contention be conceded by way of argument, it would not affect the present question of law, which requires initial decision in the Court of instance.

The necessary averments of such a pleading have been discussed in cases, and by text-writers, and are the subject-matter of Rule 60(b) of the Federal Rules, as amended in December, 1946, 28 U.S.C.A. following section 723c.

In the latter, it is said that relief may be had from a judgment or order for (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b) (10 days); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; or * * * (6) any other reason justifying relief from the operation of the judgment.

■ While the foregoing is not now in effect, it may well be consulted since it embodies the latest informed view as to the requirements of an adequate showing for relief under "a bill of review" in equity, which is said by the reviewing Court to be the analogue of a libel of review.

The following have been consulted also on this subject: Restatement—Judgments, § 121(b); Moore's Federal Practice, Vol. III, §§ 60.02, 60.03, 60.04; and Thompson v. Maxwell, 95 U.S. 391, 24 L.Ed. 481, to the effect that a bill of review will not lie where the decree was on consent, in the absence of fraud. That case has been cited with approval in many later decisions, and the only modification of its principles seems to be noticed in the presence of subsequent changes in conditions in a case where a continuing injunction has been granted; in such circumstances, appropriate action will be taken, United States v. Swift & Co. et al., 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999. Manifestly no such condition is pleaded in this Petition. See also, as to the general requirements of such a Petition, The New England, Fed.Cas.No. 10151 (Mr. Justice Story); The Columbia, D.C., 100 F. 890; Hall v. Chisholm et al., 6 Cir., 117 F. 807.

■ The inquiry required under the authorities is whether the Petition alleges facts well pleaded which constitute fraud (since newly discovered facts are not re-

lied upon), or errors of law apparent on the face of the proceedings.

The Petition will be analyzed for (a) allegations of manifest errors of law, and (b) allegations of fraud on the part of libelant or its proctors.

The first 27 Articles have to do with the parties, pending litigation for an accounting in the Supreme Court of New York, and the background of this controversy which arose from a relation of joint-adventure established about July 30, 1932. The next seven Articles recite the incidents of this litigation, and such as are material to this decision will be hereinafter discussed. For the purpose denominated (a) above, the following require consideration:

Thirty-fifth—That on the return day of process, February 28, 1945, the Court *ex parte* (at libelant's request) adjourned the return of process to March 2, 1945, "for the alleged purpose of fixing an immediate date for the trial * * * although no motion therefor had been noticed * * *".

█ Since the adjournment can scarcely be called an error of law, it did not become such because granted for the purpose stated.

Thirty-seventh—That on March 2, 1945, the motion Judge, against claimant's opposition, ordered the case placed at the top of the Admiralty calendar for the March Term, commencing March 7, 1945, subject to the disposition of the claimant's exceptions to libelant's answers to interrogatories by the Judge holding that Term, thereby denying to claimant "due process of law". For convenience, that order, which was settled on one day's notice, will be interpolated here:

"* * * (Title)

"Libellant having applied to this Court on the return of monition issued herein for an order setting the cause down for immediate trial on the ground that 32 of the vessels proceeded against herein are in the custody of the Marshall (sic) and, after hearing counsel for both parties with respect to the said application, the Court having directed that the case be placed at the head of Admiralty calendar for March 7, 1945, it is now, on motion of Foley & Martin, Proctors for Libellant,

"Ordered that this case be, and it hereby is, set at the head of the trial calendar in Admiralty for March 7, 1945.

"Dated:   Brooklyn, New York
"March 3, 1945.
"Clarence G. Galston
"U. S. D. J."

█ Since the issue had been joined on February 21, 1945, by the filing of the answer, and no delivery bond or stipulation had been given (28 U.S.C.A. § 754), so far from this being an error of law, it was the application of sound reason, to the interest of both parties by keeping the Marshal's fees to a minimum.

Thirty-ninth—The Judge signed the last-named order without the qualification referred to concerning the arguments of exceptions to libelant's answer to claimant's interrogatories, "and thereby denied the claimant-respondent due process of law".

█ This is not an apparent error of law, for two reasons: (a) The order was settled on notice, and no counter-order, containing the qualification, is alleged to have been submitted and ignored, and (b) It is not alleged that the exceptions to said answer were not in fact noticed for argument before the Judge holding the Motion Term on March 7, 1945.

Forty-second—That the Judge holding the Admiralty Term on March 7, 1945, despite having granted an order to show cause for relief under Admiralty Rule 22 of this Court, which order contained a stay, the motion under which was argued on that day, "did not decide said motion * * * and ordered that the trial commence an hour later", and thereby denied claimant-respondent due process of law.

█ The rule referred to provides in effect that the barges could have been released from attachment upon a showing of improper practice or manifest want of equity on the part of libelant. Since the trial of the cause was ordered to proceed, the motion was necessarily denied, but the allegation itself must be deemed true for present purposes.

The manifest error of law then must have consisted in ordering that the trial should proceed at the end of one hour,

to permit of argument meanwhile of the said exceptions before the Motion Judge.

The bare statement that error of law was thus committed is a mere conclusion, in the absence of a supporting factual recital.

Dispatch of the Court's business is customarily confided to the judge upon whom such responsibility rests at a given time, and mere disagreement with his action can scarcely justify characterizing it as manifest error of law within the applicable principles of a bill of review.

Forty-third—That the Motion Judge overruled the said exceptions in view of the situation portrayed in the last above article and "thereby deprived the claimant-respondent of the protection of its rights * * * and denied it due process of law", etc.

In other words, the Petitioner disagrees with the action of the Motion Judge; but something more than an allegation that the decision was erroneous—if such is indeed the purpose—is requisite to expose a manifest error of law within the applicable requirements as defined in the authorities cited.

Forty-fourth—The subsequent calling of the case for trial and commencement thereof. This is legally insufficient for reasons above stated.

Forty-fifth—(a) That the Court was informed at or during the opening, of threatened "serious loss and probably ruin if its (Petitioner's) floating equipment under seizure therein were not immediately released upon the giving of the security in the amount required by the libellant as provided by said Rule 22 * * *".

This is probably inadvertent as the said rule deals with vacating the arrest or attachment on motion, not with the giving of the bond under R.S. § 941, 28 U.S.C.A. § 754. Obviously this does not charge manifest error of law.

(b) That because an accounting before a Special Master would be required, the respondent offered to file a stipulation for value "upon delivery of proper satisfactions of said mortgages, but the proctors for the libellant misinformed the Court and

misled it with respect to the law relating to maritime liens and stipulations for value and the Court, by reason thereof, failed to order the release of said barges and the delivery of such satisfactions upon the filing of a stipulation for value".

The fact that the foregoing is contrary to the actual proceedings, as shown by the trial minutes, is of course not relevant to this discussion, which must asume the truth of the facts purporting to be stated.

The manifest error of law must lie in the failure as alleged on the part of the Court "to order the release * * * and the delivery of such satisfactions".

The question of law so presented, which is the core of the entire controversy so far as the Petition is concerned, would be whether the libelant could be required to deliver satisfaction pieces of the preferred mortgages, upon the filing of the delivery bond; that means, whether the giving of the latter would effect the "discharge * * * of the mortgage indebtedness" under 46 U.S.C.A. § 925(b). This is indeed the only critical question involved in this entire matter.

It is too clear for argument that, in the case of an ordinary lien such as for supplies, the stipulation for value is a complete substitute for the arrested vessel. J. K. Welding Co. v. Gotham Marine Corporation, D.C., 47 F.2d 332, contains an interesting discussion of the subject, and cities many cases. See also The Susana, 4 Cir., 2 F.2d 410; United States v. Ames, 99 U.S. 35, 25 L.Ed. 297.

All of the cases cited have been examined, and none involves the foreclosure of a preferred mortgage, since comparatively few arose after 1920, when the Preferred Mortgage Act was passed.

While it may seem easy or convenient to say that the lien so created should be deemed to have been automatically shifted from the vessel to the bond upon the filing of the latter, there is sounder reason, I believe, in the contrary view:

The legislative history of the enactment, and the discussion of its purposes are portrayed in Detroit Trust Co. v. The Barlum,

293 U.S. 21, 55 S.Ct. 31, 79 L.Ed. 176, which was followed in The Favorite, 2 Cir., 120 F.2d 899. There is no reason to doubt that the statute in its entirety has received complete judicial sanction, and preferred mortgages created according to its terms, and the rights and incidents thereof, have been placed upon an enduring and substantial basis, which was new to the law of Admiralty, as is shown particularly at page 47 of 293 U.S., at page 39 of 55 S.Ct. in The Barlum case.

The statute is silent as to the absorption of the mortgage lien by a bond or stipulation for value given in a foreclosure action. The only method of extinguishing the lien will be found in the section above referred to (46 U.S.C.A. § 925(b)), which may be repeated: "(b) The mortgagor upon a discharge in whole or in part of the mortgage indebtedness, shall forthwith file with the collector of customs for the port of documentation of the vessel, a certificate of such discharge. Such collector of customs shall thereupon record the certificate. In case of a vessel covered by a preferred mortgage, the collector of customs at the port of documentation shall (1) indorse upon the documents of the vessel, or direct the collector of customs at any port in which the vessel is found, to so indorse, the fact of such discharge, and (2) shall deny clearance to the vessel until such indorsement is made."

The provisions of paragraph (a) of the same section, and of sections 926, 927 and 941, treat of recordation, inspection and penalties for failure to exhibit; the creation of the lien and its extinction thus became matters of record, and for the information of the public one was as important as the other; the requirements so carefully framed are not compatible with the automatic cancellation of the mortgage lien by such collateral instrumentality as a stipulation for value, since no entry thereof in the records of the collector of customs is mentioned in the statute.

The sections dealing with foreclosure (951, 952 and 953) contain no reference to the subject, and the omission must have been deliberate in view of the study given to the subject when the bill was in Congress.

This view, moreover, follows logically from the claimant's own contention, for it is the failure to order the release "and the delivery of such satisfactions", which is relied upon to demonstrate the manifest error of law; if the stipulation or bond alone was sufficient of itself to absorb the lien as well as to present a substitute for the res, there would have been no requirement for satisfactions as separate instruments. See in this connection the Forty-sixth Article.

It results, therefore, that claimant-respondent could have filed a stipulation for value and thereby effected the release of the res from the arrest, thus permitting the barges to resume their carrying functions while this litigation could have proceeded to a conclusion upon the issue of the amount due, if any, under the preferred mortgage.

The present purpose is to show that the mere judicial refusal to act as the claimant says the Court should have acted, does not expose a manifest error of law according to the necessary showing in a bill of review. At most, the criticized position could be described as a ruling concerning which other Courts might reach a different conclusion.

Forty-eighth—This adds nothing to the Forty-fifth, being in effect repetitious.

The foregoing seem to comprehend the manifest errors of law as alleged, and are deemed to be so lacking in factual portrayal as to fall short of the requirements of such a Petition by a substantial margin.

Turning now to the possible showing of fraud on the part of the libelant and its proctors, and including, for full measure, duress and abuse of process, the following Articles require examination:

Twenty-eighth—This alleges the bringing of the foreclosure cause in this Court on February 10, 1945; and the following one states the name of libelant's proctors and the seizure of 31 barges and their continuance in custody until March 8, 1945. The next Article alleges the service of the libel, the filing of notice of appearance, claim of owner and stipulation for costs, and the answer with interrogatories, all by February 21, 1945, and the two fol-

lowing Articles state procedural incidents not requiring recital.

Nothing but the customary steps in such a litigation is thus far brought to light.

■ Thirty-third—That the respondent prior to February 20, 1945, "proceeded to arrange for the filing of a stipulation for value * * * for the purpose of releasing said floating equipment from the custody of the Marshal so that the business of the plaintiff corporation might continue"; that $73,766.66 was agreed upon but that libelant refused to deliver upon such filing "satisfactions of all the aforesaid mortgages * * * although (it) well knew that such refusal was improper and would hinder and impede the plaintiff corporation in obtaining and filing a stipulation for value as demanded and in securing the release of said barges from the existing attachment".

For reasons which I have tried to demonstrate, these allegations are not thought to spell out fraud or duress.

It is not alleged that there was anything done to prevent the release of the barges from the arrest. It was the plain right of the Petitioner under 28 U.S.C.A. § 754 to accomplish that purpose. The release from the lien of the preferred mortgage was something else, and the refusal to give "satisfactions of the mortgages" therefore was not fraud or duress within the decisions expounding that subject.

See Radich v. Hutchins, 95 U.S. 210, at page 213, 24 L.Ed. 409. The rule therein adopted is stated to be " * * * there must be some actual or threatened exercise of power possessed, or believed to be possessed, by the party exacting or receiving the payment over the person or property of another, *from which the latter has no other means of immediate relief than by making the payment*". (Italics supplied.) Cited with approval in Chesebrough v. United States, 192 U.S. 253 at page 260, 24 S.Ct. 262, 48 L.Ed. 432.

The means of immediate relief open to Petitioner was to file a stipulation for value.

■ Thirty-fourth—The substance is that the arrest of the vessels imposed an impediment upon the operations of the Petitioner's business, and was intended to compel a discontinuance of the accounting action in the State Court. As to the first, the release of the vessels could have been accomplished as has been stated, and the second is not an allegation of fact, but a conclusion which may or may not be true. There is no averment that the consent decree operated to accomplish the purpose last ascribed to the libelant.

The following five Articles are addressed to proceedings in court which have been herein described, and contain no factual averments of fraudulent conduct on the part of libelant or its proctors.

Fortieth—This has to do with a tender *under protest* (whether that would be a tender at all I do not stop to inquire) of the amount stated to be due and payable under the mortgages, and the refusal by libelant to give satisfactions of the mortgages unless a certain stipulation were given "containing statements of fact which were untrue and which, if signed, was intended to and would have resulted in the defeat of the said action for an accounting; and the defendant (libelant) advised the plaintiffs (Petitioner) that unless such terms were complied with the defendant would proceed at once to seize all the tugs of the plaintiff corporation".

■ It will be observed that the situation so described involved negotiations for the disposition of the Admiralty cause, and it is not unheard of for one party to appear to insist upon more than it can legally obtain in such a posture of affairs. It is to be remembered that the choice at all times lay with the claimant to accomplish release of its vessels, and proceed to litigate the issues presented by the pleadings. No amount of unreasonable demands could defeat that right. The request for satisfactions of the mortgages imported an element into the situation which invited counter proposals, and those the claimant was free to accept or reject.

As to the threat to proceed against tugs which had not then been arrested, it is not alleged that the libelant had no legal right to resort to that process, nor that, if such arrest had been had under legal process,

588

release of the latter vessels could not have been accomplished in the usual way.

At most, this Article charges that libelant was disposed to exact its pound of flesh by bringing to bear such coercion as legal process is designed to accomplish. The law can indeed be harsh on occasion, but so long as one threatens no more than to requisition its sanctions, lacking a showing that there is or was no "immediate relief" therefrom, there is a failure to portray the necessary basis for sustaining a bill of review or its analogue, a libel of review.

The next four Articles have been explained, and contain no allegations of fraud on the part of libelant or its proctors, and the Forty-fifth is equally passive except for the following, which is repeated here for convenience: "but the proctors for the libellant misinformed the Court and misled it with respect to the law relating to maritime liens and stipulations for value and the Court, by reason thereof, failed to order the release of said barges and the delivery of such satisfactions upon the filing of a stipulation for value".

Since the foregoing fails to charge a misrepresentation of fact, nothing is exposed to view of any present moment.

The propensity of counsel to mislead the Court, as to the law which ought to govern a given controversy, has sometimes been said to be of the essence of their calling, and their success is not always limited to trial courts. Something more than disapproval of a given decision is requisite to cast the blame upon counsel for the action of a Court in yielding to such persuasion. It happens in this instance that the contention now assailed is believed to have been legally correct.

The next three Articles contain no new allegations of fact tending to indicate fraud on the part of libelant or its proctors; and the following three Articles allege the existence of conditions affecting its business, and its arrangements to finance the release of its barges from arrest in this cause.

Fifty-second—On information and belief, that libelant had approached other creditors of Petitioner and had urged them to bring actions in rem against Petitioner's other floating equipment, and had offered the services of its proctors in that behalf. Since success is not alleged to have attended such efforts, the allegation has no present bearing.

The following three Articles are repetitious in factual content, and contain no new matter involving fraud or fraudulent conduct.

Fifty-sixth—This avers the giving of notice by libelant's proctors of an intention to move to amend the libel by increasing the demand by $25,000, and that libelant "would retract its election to sue for the alleged debt and would appropriate all of said barges to itself under said mortgage".

The foregoing fails to state fraud or duress in any factual sense. I should suppose that the giving of notice of motion to apply for certain relief could not be deemed to constitute fraud in the absence of an allegation that, for some factual reason, opposing counsel would have been prevented from attempting to persuade the Court to deny the motion as proposed to be made.

Fifty-seventh—This avers the Petitioner's belief that timely relief could not be accorded to it by the appellate court. That of course is not an allegation relevant to this analysis.

Fifty-eighth—This alleges a tender of the amount claimed to be due, which was made "unwillingly and in order to emancipate its property from the said actual and existing duress imposed upon it by the said libellant", the sum so tendered "to be exchanged for satisfactions of all said mortgages".

This introduces no new factual allegation, and requires no comment in addition to what has been written.

Fifty-ninth to Sixty-sixth, inclusive— These contain no new factual allegations tending to lay bare fraud or duress on the part of libelant or its proctors.

It will thus be seen that the Petition as a pleading is legally insufficient in content to justify a reopening of the consent decree to which it is addressed.

The matter has been disposed of as though Exceptions had been filed, as perhaps they should have been, but the assumption has been indulged that the opinion of the Circuit Court of Appeals is a direction to the District Court, to assay the Petition without reference to any procedural refinements. If Exceptions had been filed, they would have served the office of that ancient but useful device called a demurrer, and the Petition, having been tested for legal sufficiency, would have been found wanting—which is the present outcome.

If the urbane provisions of subdivision (6) of the Amended Rule 60 (b) above quoted should be thought to affect the disposition of this Petition, no different result would be reached, since there is no allegation that the pending action for accounting in the Supreme Court of New York cannot proceed to judgment and that the rights and liabilities of the parties cannot be therein established. Nor is there any allegation that, after that action was instituted on December 21, 1944, and before this libel was filed on February 10, 1945, any effort was made, as the result of the commencement of that litigation, to prevent the prosecution in this Court of the foreclosure cause.

For the foregoing reasons, the Petition will be dismissed for insufficiency as a matter of law.

Settle order on notice.