ESTATE OF CHARLOTTE C. LOZIER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7513.    Promulgated August 8, 1927.

Gift of property by decedent to her children within two years of her death, *held*, on the evidence, not made in contemplation of death.

*W. C. Magathan, Esq.*, and *Louis E. Guillow, Esq.*, for the petitioner.

*J. F. Greaney, Esq.*, for the respondent.

The Commissioner has determined a deficiency in estate tax of $3,111.37. The petitioner assigns as error the action of the Commissioner in including in the gross estate certain farms of decedent on the ground that they were transferred in contemplation of death.

### FINDINGS OF FACT.

The decedent died intestate on March 12, 1922, at the age of eighty-one or eighty-two years, at the home of her daughter, Estelle L. Baker in Newton, Mass.

In early life she moved to Indiana with her parents, was married in that State and continued to live in the town of Aurora, Ind., until 1916. Throughout her life she lived in a quite, unostentatious manner, the simple life of a country town. She always experienced good health and came from a long-lived stock, some of her family having lived to the age of ninety years or over. In 1916 her home in Aurora, which was located on the banks of the Ohio River, suffered from the disastrous flood of that year and water reached to the second floor of her home. Thereafter, during the balance of her life, she spent her time between the homes of her two daughters. She lived with her daughter, Estelle L. Baker, from the fall of 1918 until well into the summer of 1919, and again from July, 1921, to the date of her death. The balance of the time from 1916 was spent with her daughter, Perle L. Smith. Until December 15, 1921, decedent's general health continued excellent and she required no medical attention. While in Newton in 1921 she was in the habit of spending a good deal of time outdoors. She attended church almost every Sunday and assisted in the housework at her daughter's home. During this period she talked of buying a home in Newton with the idea of bringing her furniture and belongings from Aurora to that place. On December 15, 1921, she suffered a slight or partial stroke of paralysis which affected her speech and power of movement for a few days. She was attended by her son-in-law, John Walter Baker, a retired Navy surgeon, and by a Dr. Stubbs. They found her pulse strong and her condition generally good for a woman of her years. Within a day or two after her illness she was up and dressed, though she was never thereafter as active as she had been. It was not until in January, 1922, that it was deemed advisable to employ a nurse, at which time a companion nurse was engaged. After her illness decedent went on with her affairs substantially as before the attack, her mental condition remaining the same, and she was in good spirits until her death. She was never advised by the attending physician of the nature of her illness.

Decedent in the summer and fall of 1921 owned over 2,000 acres of farm land in South Dakota, over 600 acres in Minnesota, a farm of over 800 acres in northern Iowa and 240 acres additional in central Iowa, besides her homestead in Indiana. She also owned $60,000 in Liberty bonds and other securities, stocks and money in the bank, amounting to $30,000 or $40,000.

In 1916 she advised her two daughters of her intention to give them one or more of her farms and went to see a lawyer with a view to the drafting and execution of the necessary papers to put the matter into effect. She was strongly urged by the lawyer not to do so and was warned of the evil consequences often attendant upon parents giving their property to their children. Decedent mentioned her intention of making a gift of the farms in 1918 and again in 1919, but let the matter drift without taking any definite action. In 1920 one of her daughters, Mrs. Smith, was in financial straits in connection with the estate of her deceased husband and decedent was concerned lest if she gave the lands to her daughters, the creditors of Mrs. Smith might get possession of the latter's share. In 1921, upon her return to Newton, she stated that the farms were a source of trouble to her, and moreover she did not need the income from them as much as her children did, and expressed her intention of at once making a deed of gift to her daughters. In November, 1921, she sent word to Louis E. Guillow, an attorney of Boston who had theretofore performed some legal services for her, to come to see her relative to preparing the necessary deeds. Thereafter, and within the first two or three days of December, 1921, Guillow called on decedent and discussed with her the matter of making the gifts, but did not immediately draw the instruments because the old deeds containing the descriptions of the property could not be located. On this occasion decedent stated to Guillow that she wanted the overdue rent from the farms to come to her in order that she might use that money to pay the taxes to become due on the farms in January, 1922. She was assured that the transfer would not affect her right to receive the rents then due and payable. Some time after this conversation and prior to decedent's illness, the old deeds were found and turned over to Guillow, who arranged at the time that the deeds of gift would be prepared and brought back for execution on December 17, 1921. On the latter date decedent executed the warranty deeds conveying the farms to her daughters, Estelle L. Baker and Perle L. Smith, which deeds contained no condition or reservation of interest in the grantor. Immediately upon the execution of the deeds decedent sent for her daughter, Estelle L. Baker, and delivered the deeds to her with the remark, " This is a Christmas present for you and Perle." Decedent was in

the habit of making Christmas gifts to her children and one Christmas had given each an automobile. During the last two years of her life she contributed from seven to ten dollars a week for her maintenance and laundry while in the homes of her daughters.

OPINION.

Arundell: Section 402 (c) of the Revenue Act of 1921 provides that there shall be included in the gross estate of a decedent the value of any property of which the decedent has made a gift in contemplation of death or a transfer intended to take effect in possession or enjoyment at or after death, and further provides that a transfer within two years of death of a material part of a decedent's property shall, unless shown to the contrary, be deemed to have been made in contemplation of death. The gifts here in question were made within two years of death, and under the presumption of law created by the statute must be deemed to have been made in contemplation of death, unless the evidence produced serves to overcome that presumption.

In the well-considered opinion of *Rea* v. *Heiner*, 6 Fed. (2d) 389, the court, after reviewing a number of State and Federal authorities, states:

> There is a common agreement that the words "contemplation of death" mean not the general knowledge of all men that they must die; that it must be a present apprehension, from some existing bodily or mental condition or impending peril, creating a reasonable fear that death is near at hand; and that, so arising, it must be the direct and animating cause, and the only cause, of the transfer. If this apprehension, so arising, is absent, there is not that contemplation of death intended by the statute, especially when another adequate motive actuating the gift is shown.

This statement of law is abundantly supported by the authorities. *Shwab* v. *Doyle*, 269 Fed. 321; *Spreckels* v. *State*, 30 Cal. App. 363; 158 Pac. 549; *Vaughan* v. *Riordan*, 280 Fed. 742; *Meyer* v. *United States*, 60 Ct. Cls. 474. Also see *Appeal of Philip T. Starck*, 3 B. T. A. 514; *Appeal of Spencer Borden, Jr.*, 6 B. T. A. 255.

Applying the law as thus expressed to the facts as set forth in the findings, we have no hesitation in reaching the conclusion that the gifts were not induced by a present apprehension of death and were not made in contemplation of death as that expression had been interpreted.

Decedent had in mind making the gifts to her daughters for a number of years and was dissuaded from doing so first, in 1916, by the sage advice of her counsel, and again by fear that the creditors of one of her daughters might deprive her of the benefits she wanted to confer. At the time she definitely determined to delay no longer, in 1921, she was in excellent health and had practically never known

a sick day in her life. It is true she had passed the allotted three score years and ten, but she was from a long-lived family and was optimistic that she had many years yet to live. She retained to herself an estate more than sufficient to give her all of the comforts to which she was accustomed and by her act was both able to help her children, who needed assistance, and to relieve herself of the management of farms located at distant places which had been only a trouble and bother to her. While it is a fact that she suffered a slight stroke of paralysis two days before the execution of the transfers, the evidence is uncontroverted that while yet in unimpaired health the plans and details had been determined upon and the instruments themselves were in process of preparation. Indeed on the date of execution of the transfers, two days after her spell, she had sufficiently recovered to be up and dressed.

Respondent has suggested that the transfers were made to take effect in possession and enjoyment at or after death because the evidence disclosed that decedent retained to herself the rents then due for the farms. This contention is without merit. The instruments of conveyance were absolute.

*Judgment will be entered on 15 days' notice, under Rule 50.*