TOWN OF WESSON v. T. C. COLLINS.

1. MUNICIPALITY. *Ordinances. Contemporaneous construction.*

Contemporaneous construction by municipal authorities may be considered in case of doubtful ordinances, but not when they are clear.

2. PUBLIC OFFICER. *Compensation. Voluntary payment. Recovery.*

Where by ordinance a town marshal is allowed a monthly salary, and, in addition, a *per centum* to be retained out of taxes collected, and for a series of months he receives the salary as in full and pays over all taxes, without retaining his commissions, this will be deemed a voluntary payment, and he cannot afterwards recover such commissions. *Jackson* v. *Newman*, 59 Miss., 385, cited.

3. SAME. *Legal compensation. Accepting less. Public policy. Voluntary payment.*

In such case, though an unexecuted agreement of the officer to accept less than his legal compensation for the discharge of public duties, being contrary to public policy, is not enforcible, yet when such agreement is consummated by voluntary settlements from time to time, in which he actually accepts less than he is entitled to, he cannot afterwards recover the remainder.

FROM the circuit court of Copiah county.

HON. J. B. CHRISMAN, Judge.

Appellee was elected marshal of the town of Wesson in 1891, for a period of two years. Under the charter and ordinances, he acted as marshal and street commissioner, and, in addition, assessed and collected taxes. He sued the town for five per cent. commission on certain taxes assessed by him for 1892, and three per cent. for collecting. Defendant pleaded the general issue, and gave notice that it would offer evidence that plaintiff qualified as marshal in December, 1891, and served with the distinct understanding that he was to receive $40 per month for the performance of all duties provided for by the ordinances of said town, and $5 per month as street

commissioner, and that he had been paid such sums in full satisfaction. Defendant also gave notice that the commissions' claimed by plaintiff on taxes collected had been voluntarily paid into the town treasury, and, therefore, could not be recovered by suit. Trial by jury was waived and the case was heard before the court. Various ordinances were offered in evidence and other testimony given, as indicated in the opinion. It was shown that all the taxes collected by Collins during the term of his office were paid into the town treasury as collected, and that he did not claim any commissions out of the same at the time, and that this suit was not instituted until after he was defeated for re-election. Plaintiff recovered judgment for $447.93. After the rendition of the judgment, defendant moved the court to enter a remittitur of $90, an alleged excess of the amount of commissions on taxes collected. This motion was overruled. Defendant appeals. The opinion contains such further statement of the case as is necessary to an understanding of the questions decided. It is not deemed necessary to set out, at length, the various ordinances referred to.

*J. S. Sexton,* for appellant.

That portion of § 9 of the ordinances relating to the commissions of the assessor and tax collector had been repealed before Collins became marshal. The ordinance fixing the stated salary for the services of the marshal, necessarily repealed all former ordinances, by which he was to be paid both fees and salary. 43 N. J. L., 13; 103 Ill., 617.

The undisputed testimony is that, when he was about to enter upon his duties as marshal, a resolution was passed by the board in his presence, to which he consented, that he should receive $40 per month for acting as marshal, assessing property and collecting taxes. It was not necessary that this resolution should be entered on the minutes of the board. See 2 Dill. on Mun. Corp., § 238; 17 Am. & Eng. Enc. L., 243; 69 Pa., 328.

A contemporaneous construction of an ordinance adopted by

all the parties interested in its enforcement, although not controlling, is in all cases entitled to great weight. 49 Mo., 401; 7 Ill. App., 438.

If the ordinance of 1893 was not repealed, then no salary whatever was fixed by ordinance and the marshal was only entitled to commissions for assessing and collecting taxes, which did not equal the $40 per month he received.

The failure of Collins to retain commissions, and his payment of the same into the town treasury, operated as a voluntary payment, and he cannot recover the same. *Jackson* v. *Newman*, 59 Miss., 385; 18 Am. & Eng. Enc. L., title Voluntary Payment; 9 Allen, 393; 56 N. Y., 289; 59 *Ib.*, 603; 4 Gill. (Md.), 425; 46 Cal., 589; 4 Waits. Ac. & Def., 476, 479.

*R. N. Miller*, for appellee.

There is nothing in the evidence showing an estoppel. The testimony to the effect that the officer agreed to receive less than his legal compensation was all incompetent. Greenhood on Pub. Pol., 350.

Again, the action of the authorities could only be expressed by resolution duly entered on the minutes. 52 Miss., 107; 58 *Ib.*, 818. Appellee was elected by the people and was entitled to the compensation provided by the ordinances. I refer the court to 9 Am. & Eng. Enc. L., p. 914, and note 5; *Insurance Co.* v. *Brainard*, 72 Iowa, 130.

There was no voluntary payment of the commissions in this case, because it was not claimed or demanded that appellee should pay the commissions into the treasury. *Howe* v. *State*, 53 Miss., 57.

Argued orally by *R. N. Miller*, for appellee.

WHITFIELD, J., delivered the opinion of the court.

A careful consideration of the ordinances of June, 1883, July 7, 1885, July 5, 1887, and March 11, 1889, makes it clear that one person (the town marshal) is to perform all the duties

of marshal proper and of tax assessor and tax collector.    It is called "his office." ' He is said to be, *ex officio*, tax assessor and tax collector.    There are three kinds of duties—the duties usual with a constable or marshal, and the duty of assessing the taxes and the duty of collecting the taxes.    But one person, the marshal, is to discharge all.    But it seems to us to be equally clear that, throughout all these ordinances distinct and separate compensation is contemplated for each different kind of service. The ordinances of 1883 provide for assessing the taxes "five per cent. on the amount of tax for judiciary (general) purposes;" for collecting the taxes, three per cent. "on all collections, to be retained by the tax collector in settlements;" for the mar- shal, "reasonable compensation per day or per month, to be fixed by the mayor and aldermen;" and, by way of fees, $1.50 in each criminal case, "or same fees as constables in similar cases" receive.    No salary was thus far provided.    But the ordinance of July 7, 1885, provided that the then marshal, G. B. Mullins, should receive $50 per month, as "salary," and that "all fees that might become due him from July 1, 1885, should be turned over to the treasurer by the mayor at the end of each month, and credited on the judiciary fund."    The "fees" here referred to clearly must be the $1.50 in each criminal case referred to in the ordinances of 1883.    They were to be turned over "by the mayor" to the treasurer.    The mayor would have nothing to do with the five per cent. and the three per cent. commissions.    He could not be spoken of as turning them over to the treasurer.    The word "fees" may be large enough to import "commissions," but the context of the ordinances shows the word was not here so used.    We note, counsel for appellant, in his brief, writes the words, "by the marshal;" but they are in the record, plainly, "by the mayor." There is nothing to show that there has been a clerical error in making up the transcript.    But the ordinance of March 11, 1889, provided that the "marshal elect [Bridges] should be entitled to all the perquisites of the office as constable."    If it

be said that these acts relate only to Mullins and Bridges, the ordinance of July 5, 1887, expressly provides: "On motion, the marshal's *salary* was fixed at $40 per month, commencing from March 1, 1887." The scheme, therefore, made by the ordinances, clearly provided for distinct compensation for each kind of service—five per cent. for assessing, three per cent. for collecting, and first "fees" and afterward "salary" for acting as marshal proper.

It is earnestly insisted that the uniform, contemporaneous construction put on these ordinances by the officials of the town, including appellee, has been that the forty dollars were to be in full for all services, and oral proof was offered, subject to objections, abundantly establishing this as a fact; but, without observing as to the competency of this proof, we are satisfied that contemporaneous construction may be properly looked to when the ordinances are doubtful, but not when, as here, they are clear. To allow such effect here would be to repeal the ordinances of 1883 by contemporaneous construction, not to interpret them.

The second contention of counsel for appellant is that there is nothing in the record except the ordinance of March 11, 1889, giving the appellee a salary, as marshal, of $40 per month, and that, as the payment of $40 per month aggregated a sum greater than the eight per cent. commissions for assessing and collecting the taxes, he is overpaid, and the town should have judgment over. Counsel overlooks the ordinance of July 5, 1887, which disposes of this contention.

The third contention of counsel for appellant is manifestly sound. The payment of the three per cent. on the taxes collected was a voluntary payment. Appellee paid the three per cent. not once nor twice, but, as he himself says, every day. He was marshal thirteen months. He was required to pay in, monthly, taxes collected; did pay in, every day; collected his salary of $40 per month every month, and never once presented any claim for commissions as tax assessor and tax col-

lector till after he was defeated for re-election by Cagle; and this, too, though the city was paying the $40 per month as in full, and standing upon the position that no more was due, and the ordinances of 1883 provided that he was to retain, on settlements, three per cent. for collecting. There can be no doubt that the payment of the three per cent. on taxes collected was a voluntary payment, and not recoverable under the very peculiar facts of this case. He had been paid, had his salary in his own hands, and did not "retain it." *Jackson* v. *Newman,* 59 Miss., 385; *Tupelo* v. *Beard,* 56 *Ib.,* 532; *Mayor* v. *Lefferman,* 4 Gill (Md.), 425; 18 Am. & Eng. Enc. L., p. 214 *et seq.;* 4 Wait's Ac. & Def., 476, 479.

We do not think there was any error in overruling the motion as to the remittitur.

For the error indicated in not refusing to allow a recovery as to the three per cent. for collecting taxes, the same being voluntarily paid, the judgment is

*Reversed and cause remanded.*

*R. N. Miller,* for appellee,

Filed a suggestion of error, making the following points: The court erred in assuming that the city was demanding or claiming the commissions on taxes collected, which it is alleged were paid in voluntarily. The attitude of the city is to be ascertained only by its ordinances, and these cannot be proved by parol, but must be shown by the record. 52 Miss., 107; 58 *Ib.,* 818. There can be no such thing as voluntary payment where the sum is not claimed or demanded. Here the town of Wesson was not claiming that the commissions should be paid into the treasury. Therefore, paying the same in could not operate as an estoppel against appellee. In 18 Am. & Eng. Enc. L., p. 214, referred to in the opinion, it is stated that, in order to make a payment voluntary, it must be under claim of right. The authorities cited by the court do not apply because they are of cases of payment of illegal claims without protest.

Appellee was required to give two bonds, one as marshal and the other as *ex officio* assessor and tax collector. The ordinances provide for paying him separately. While voluntary payment operates as an estoppel, a public officer cannot, on grounds of public policy, by contract or otherwise, estop himself to demand the compensation allowed by law. Greenhood on Pub. Policy, 350; 18 Am. & Eng. Enc. L., 147–157; 25 Iowa, 487; 47 *Ib.*, 264; 58 *Ib.*, 281; 72 *Ib.*, 130.

In *Howe* v. *State*, 53 Miss., 57, it was held that the allowance by the board of supervisors to a county treasurer of more than lawful commissions was not a voluntary payment, and that the excess could be recovered. The converse of this must be true. Here the officer has put into the treasury money to which the corporation has no shadow of right and to which it made no claim, and we are told he is estopped to sue for it. Estoppels must be mutual. If the corporation could recover commissions unlawfully paid, the officer should be allowed to recover when he has made an excessive payment.

In any event, I respectfully submit that the ordinance authorizing commissions to be retained in settlements, only applies to the three per cent. for collecting, and cannot apply to the five per cent. commissions for assessing. The record shows what amount on each account was embraced in the judgment. If it does not, and the court must reverse the entire judgment, then I ask that the opinion be so modified as to allow appellee to recover his commissions as assessor on another trial.

WHITFIELD, J., delivered the following response to the suggestion of error:

It is urged that the court erred in holding that the doctrine of voluntary payment applied, in any event, to the five per cent. commission for assessing. Counsel says: "The court overlooked the fact that the words in the ordinance, 'to be retained by him in his settlements,' only applies to the three per cent. for collecting, and could not, from the nature of the case, apply

to the five per cent. commissions for assessing.'' The curious thing about this is that the opinion in this case expressly held that the words quoted did only apply to the three per cent. for collecting. · How it could have been so clearly misread is incomprehensible.

The suggestion that the city only speaks through its ordinances is perfectly sound. The court entertained no doubt as to that. The decision is not rested on the testimony of the aldermen, but on the testimony of Collins himself, and of Cagle. It clearly appears from this testimony that Collins told Cagle that, if he should be elected, he would have to assess the taxes, collect the taxes, and perform all the other duties of marshal, for only $40 per month; that he, Collins, had been acting on this basis, and had, throughout his whole incumbency, so acted. Nor is the principle that contracts by public officers to increase or diminish the compensation fixed for them by law, involved here. It is elementary. The authorities cited by counsel (Greenhood on Public Policy, 350; 72 Iowa, 130; and 58 *Ib.*, 281), announce merely this elementary principle; and 25 Iowa, 487, and 47 *Ib.*, 264, the attorneys' cases, add nothing to it. The case which is in point, directly here, and which is decisive in support of the view taken by us, in an almost identical case, is *Hobbs* v. *The City of Yonkers*, 102 N. Y., 13, to which we call counsel's special attention. There the law allowed the treasurer, at the time he was appointed by the city council, one per cent. on all payments made by him, but the city council, by an amendment of the charter afterward made, was allowed to fix the salary at $2,000 per annum. This it did not do on its minutes, but a written agreement to that effect was made between the city council and the treasurer. He sued for the fees, after getting the $2,000. The court says: '' When the plaintiff was appointed, he was entitled to a percentage on all moneys received by him, and no authority existed in the common council to change the compensation thus fixed, and the writing signed by the plaintiff was, of itself, inoperative for any such purpose.

Nor was any sum afterward fixed by action of the common council, or any new appointment of the plaintiff made. He remained in office until his successor was appointed, discharging the duties as he had previously done, and receiving a compensation of $2,000 a year therefor. Each year he rendered an account and paid all his receipts into the city treasury, except that he retained the sum of $2,000 annually, which was allowed him for his compensation. Upon this basis his accounts were adjusted, and, during the whole of his term as city treasurer, he made no claim for any further compensation than the amount which had been agreed upon. The agreement was a voluntary one. . . The agreement was entered into and was fully performed and executed. It was not an executory agreement, against which a party could set up any legal defense and justify his refusal to perform the same. All of its conditions had been carried into effect and executed before this action was commenced, with the consent and approval of all the parties. As we have seen, the plaintiff had settlements with the common council annually upon the basis of this agreement, assuming that it was valid and effectual, and thus he precluded himself from repudiating the same." The "basis" here was the settlements and payments made by Collins throughout his term, as testified to by himself and in his admissions to Cagle. And as to the three per cent., it was an executed agreement.

The only hesitation we have felt has been as to whether we should not have reversed the judgment generally as to the five per cent. commissions as well as to the three per cent., but we have thought that, as to the three per cent., Collins had his salary in his own hands, was directed to "retain it," and hence the payment was clearly voluntary as to the three per cent.; but the five per cent. commissions were a debt due from the city. They were not to be retained. There was no payment of them by Collins to the city in any proper sense, as of payment of the three per cent., and hence, with hesitation, we held that he could recover the five per cent. commissions. The

court, in *Hobbs* v. *City of Yonkers, supra*, after referring to the argument made, as here, that a contract to increase or diminish compensation of a public officer fixed by law, is void, says, as we say: "These cases are clearly distinguishable from the one now considered. The plaintiff here received into his hands sufficient to pay the amount of fees to which he was entitled, which were fixed by law, and voluntarily paid the same over to the city, less the amount agreed upon. . . He has thus, by his own act, estopped himself from claiming the benefit of the principle decided in the cases cited;" and so Collins is estopped here. This New York case was exhaustively argued, and is decisive against all counsel's contentions. *Howe's Case* is obviously not in point on the facts of record.

We have thus, at unusual length, responded to the suggestion of error. We have done so out of deference to the very great ability of the counsel for appellee. We have wished to satisfy him that we do not set forth at large, always, the authorities supporting our views, desiring to say only what is essential, and that this court "overlooks" no fact which a record contains, and fails to carefully read no relevant authority cited by counsel.

The desire of the advocate to win his cause cannot exceed the concern felt by this court to know thoroughly the case made by the record, and to decide just that precise case on that record.

*The suggestion is overruled.*