**STRIMLING v. STONE.**

No. 14405.

United States Court of Appeals
Eighth Circuit.

Jan. 29, 1952.

Melvin H. Siegel, Minneapolis, Minn. (George B. Leonard, Sidney Barrows and Leonard, Street & Deinard, all of Minneapolis, Minn., on the brief), for appellant.

Sidney J. Kaplan, Minneapolis, Minn. (Hyman Edelman, Sheldon Kaplan and Kaplan, Edelman & Kaplan, all of Minneapolis, Minn., on the brief), for appellee.

Before SANBORN, WOODROUGH, and RIDDICK, Circuit Judges.

WOODROUGH, Circuit Judge.

In 1933 Mr. Louis Strimling, who was then and long had been engaged in the business of manufacturing overcoats and topcoats in Minneapolis under the name Western Manufacturing Company, employed Mr. George Stone to work for him in the business for the period of a year in the capacity of "production man", "supervisor of the factory", and the relationship of employer and employee so established continued from year to year without interruption until Mr. Stone, approaching the age of 70, retired at the end of the year 1948 and moved to Texas. In July of the next year Stone brought this action against Strimling in the federal court, where there was jurisdiction by reason of diversity of citizenship, claiming that he had earned large sums of money under his contract of employment over and above the amounts that had been paid him each year, and in six counts of his complaint he sued for the unpaid balances he alleged to be due him for the six years within the period of the statute of limitations, to wit: 1943, 1944, 1945, 1946, 1947 and 1948, respectively. Strimling answered that he had not only paid Stone all that was coming to him in each of the said years, but that he had "through excusable inadvertence and mistake" overpaid him each year, and he sought recovery of the amounts of such overpayments in said years by way of counterclaims separately set forth.

On the trial of the case Stone recovered a jury verdict in his favor on each of the six counts of his complaint in the aggregate amount of $16,147.08, and judgment was entered thereon against Strimling. The verdict was against Strimling on his counterclaims and they were dismissed. Strimling appeals.

It appeared without dispute on the trial of the case that when Strimling first employed Stone at the beginning of 1933, the agreement between them in respect to the business of the Western Manufacturing Company was that for the ensuing year each of them was to receive $50 per week and at the end of the year Strimling was to receive 8% on the amount of his investment in the business of which he was the sole owner, and then Stone was to receive one-half of the net profits of the business after all expenses and salaries were deducted.

Stone's claim was that the terms of his employment remained the same under a series of employment agreements for each of the years throughout the entire period from 1933 to 1948, inclusive, and that Strimling, who had charge of the books and accounts of the business purported to pay him each year in accord with said terms. Stone claimed as the actionable breach of the contract by Strimling that although Strimling allowed and paid only the $50 a week as the salary provided by the agreement to Stone, he credited himself on the books and allowed and drew out for himself as salary amounts much larger than $50 a week in each of the years in suit and thereby became indebted to Stone on account of such excess salary payments to himself.

Strimling admitted that after 1944 he had not limited his salary to $50 per week as he had agreed to do for the year of 1933 and as he had done for succeeding years. But he said that the duties which he was performing in the carrying on of the business in 1944 included buying, selling, credits, financing and management, and he decided that he should draw salary as an executive. He testified that in October of 1944 he told Stone that he would thereafter draw salary as an executive up to $10,000 a year, and his testimony was corroborated by an employee in the business named Feldman, who testified he was present at the conversation. Accordingly, as was shown by the undisputed audits of the business, Strimling did credit himself on the books and draw as salary much larger amounts within the ten thousand dollars a year limit in each of the years 1945, '46, '47, and '48 than the $50 a week

he allowed and paid to Stone as Stone's salary. The excess of the drawings by Strimling over the drawings by Stone, the amounts of which were agreed to, constituted the basis of the verdict and judgment for Stone on the four counts numbered 3, 4, 5, and 6, covering the years 1945, '46, '47, and '48.

It was undisputed at the trial and is conceded here that Strimling had a perfect right as the employer to declare and dictate to his employee Stone the terms on which he would employ Stone in any future year not covered by existing contract and that if Stone, after being told the terms, continued on the job he would be bound by the terms the employer offered. That Stone continued on the job after 1944 was manifest and Strimling claimed that he did so with full knowledge of the changed terms which were offered him and knowing that the changed terms were being applied in each of the yearly settlements made with him after 1944.

But Stone denied that Strimling ever told him he was going to take a salary up to $10,000 a year and asserted that he never knew until this suit was brought that Strimling was taking more than the $50 per week originally agreed upon.

Inasmuch as the parties had audits of the Western Manufacturing Company business for the years in question and there was no dispute as to the amounts carried on its books as salaries and paid to Strimling and to Stone, respectively, from year to year, nor as to the earnings and outlay of the business, a decisive issue for the jury in these counts of Stone's action was whether or not Strimling told Stone in October of 1944 that he, Strimling, was going to take an executive's salary up to $10,000 a year (instead of the $50 a week he had theretofore been taking). If Stone was so told by Strimling at that time then Stone manifestly had no grounds for recovery in the action for the years 1945, '46, '47, and '48, because he had stayed right on the job and the evidence was undisputed that he was fully paid on the modified terms of employment.

Strimling contends that his defense on this simple and decisive issue was not clearly or fairly submitted to the jury in that: (1) The court erred to Strimling's prejudice in its comments and rulings in the examination of Strimling as a witness, and (2) in its instructions to the jury purporting to state the issue and the law applicable to it.

(1) The testimony of Strimling and his corroborating witness was that when Strimling told Stone that he was changing the employment terms and was going to take an executive salary of $10,000 a year, Stone became abusive and insulting and "walked out on him", and Strimling testified that although Stone knew the changed terms were applied in the years following 1944 Stone "never said a word" then or later about the change. On cross-examination of Strimling he was pressed to answer yes or no whether Stone "consented" to the change, whether Stone "agreed" to it, and whether a "consent" or "agreement" to it had been "obtained" from Stone. Strimling continued to answer that Stone "never said anything about it; he knew about it". The court commented that the answer was not responsive and ordered it stricken. Again Strimling was asked: "Did [Stone] ever agree with you that you could draw an $8,400 executive salary for the years in which you took $8,400 executive salary?" A. "Why does he have to agree to it? He knew that I was going to take it."

"The Court: It may be stricken."

"Q. But you didn't obtain his consent? A. How could I when the man walked out on me?"

"Q. But you didn't obtain his consent, did you? A. He came back and went to work. If he wasn't satisfied he could leave."

"The Court: The answer may be stricken. [To the witness] You did or you didn't obtain his consent. You may answer."

Like questions, answers and rulings are repeated over and over in the record. Under this compulsion Strimling ultimately said he did not recall ever getting Stone's consent.

On this appeal he insists that the court's comments and rulings were prejudicially

erroneous in that their necessary effect was to divert the jury's attention from and to confuse the real issue presented by Strimling's claim that Stone was notified of the change in the terms of his employment and with that knowledge continued on the job and Stone's denial that he was so notified. There was no claim or issue that Stone ever as an independent fact gave expression to "consent", "agreement", or "acceptance", or that Strimling obtained from him a consent, agreement or acceptance, but the conduct of the examination made it appear that there was such a claim or issue.

(2) The instructions to the jury cover some ten pages of closely printed matter and the gist of a complaint Strimling makes against them is that there is not to be found in them any clear statement of the decisive issue presented by Strimling's corroborated claim that he told Stone he was going to change employment terms by drawing up to $10,000.00 a year himself, and that Stone being so informed continued on the job, and Stone's denial of the notification.

The instructions sufficiently set forth Stone's version of the controversy and his claim that there had never been any change in the original understanding that equal salaries of $50 per week were to be paid to Strimling and to Stone, but in purporting to set out Strimling's defense, the instructions omit any reference to the vital testimony of Strimling that he told Stone he was going to draw up to $10,000.-00 executive salary and to the corroboration of that testimony by the witness Feldman. The only relevant sentences descriptive of Strimling's testimony appearing in the instructions are as follows: "The defendant Strimling has testified that in October 1944 he told the plaintiff Stone that in the future he would charge an executive salary to cover certain expenses; and he further testified that to him 'executive salary' meant that he had a right to draw up to ten thousand dollars annually." And "You should also bear in mind the testimony of the defendant that in October 1944 he told the plaintiff that in future years he would draw an executive salary." But appellant rightly contends that these sentences did not fairly state the true purport of the testimony that Strimling presented and relied on in respect to the decisive issue. In purporting to state what Strimling testified to, it omits entirely Strimling's testimony repeated many times in the same or substantially the same words, "I told Mr. Stone I am going to take executive pay up to $10,000", and the corroboration of the witness Feldman, also often reiterated, "Mr. Strimling said to Mr. Stone * * * 'I am going to draw $10,000 a year executive pay'". The plainly apparent error in the epitomizing of the defense testimony was not corrected throughout the instructions.

In the instructions on the law the jury was told that it should find a verdict for defendant Strimling if Stone "consented [to the drawing of sums in excess of $2,600 per year by Strimling] expressly, impliedly, or by conduct". Then following something more than two pages of instructions on matters extraneous to this issue, a random and disconnected paragraph in the instructions is found which reads: "A mere protest by an employee is not alone sufficient to prevent acceptance of the terms of employment offered him for any future period not covered by a then existing contract, if the employee stays on the job in such future period."

A further instruction was "Any changes in the contract of employment, whether written or verbal * * * relating to the compensation of Stone * * * would not be binding on Stone unless he agreed and consented to such changes, and you are instructed to disregard any claimed changes unless you find from the evidence that Stone agreed to such changes."

Thus the record shows that in taking of the testimony before the jury great stress was laid, as though it was a matter of importance, on whether Stone had "consented" or "agreed", or whether Strimling had "obtained" Stone's "consent" or "agreement" to the change of the terms of employment and the instructions quoted from were specifically related to such "consent", "acceptance of the terms of employment" or "agreement" by Stone. In view of the

corroborated defense testimony that when he was told by Strimling of the change in employment terms Stone became insulting and abusive and "walked out on Strimling" and never spoke of it afterwards, the language of the instruction is manifestly inappropriate to the testimony and confusing of the issue. There was no explanation to the jury of what was meant in the instructions by "if Stone consented * * * impliedly or by conduct", nor by the use of "acceptance of the terms", by relating those expressions to the testimony that had been elicited before the jury.

The simplest of issues as to whether changed terms of employment of Stone were accomplished by notification to Stone was rendered obscure and confused and the defense on which Strimling relied as to the counts in question was not clearly or fairly submitted. Defendant requested a proper instruction, "that if you believe that the defendant notified the plaintiff that beginning in the year 1945 and thereafter, he would deduct a salary for himself in the amount of up to $10,000 a year, the plaintiff is not entitled to recover anything for those years", and his exceptions to the instructions given were timely taken and although they were unduly prolix did include objections to the errors here considered.

█ It need not be held that mere obscurity in an instruction respecting an extremely simple issue within common everyday experience such as here involved always necessitates reversal. But the record here shows that day after day, in a trial that was protracted over many days, one technical disputation after another in diversified fields of law was injected into the case. There were seventeen pages of requested instructions and the record is extensive. There are four printed briefs. Furthermore, it was manifest throughout the trial that there were two witnesses without any legal interest who must have known positively whether or not Strimling had honestly accounted to and paid Stone. A lady worked as bookkeeper in the office, and the certified public accountant, Joe Lubov, not only audited the books and made out the income tax returns in respect to the business, but he also made out his income tax returns for Stone. The exclusion of these witnesses by both parties accentuates that it was a trial of wits rather than of merits. It was most conspicuously a case where the controlling issues for the jury had to be clearly defined before them, and one in which a heavy burden was imposed on the court to maintain such clarity. It resulted from the errors appearing very plainly on the record that the decisive issue we have discussed was rendered obscure and was not kept clear to the jury. Strimling's side of it was not fairly submitted and the judgment for Stone on his causes of action numbered 3, 4, 5 and 6, must be reversed.

The judgment appealed from includes recovery by the plaintiff of the amounts of $698.25 and $871.72 on counts 1 and 2 of the complaint for alleged excess salary drawings by Strimling over salary allowances to Stone in the years 1943 and 1944 and that part of the judgment has not been considered in the foregoing discussion. Strimling did not notify Stone of changed terms of his employment until October, 1944. Prior to that time there remained the verbal understanding between them, not evidenced by any writing, that the same salary of $50 a week or $2,600 a year was to be paid to each. In the brief for Strimling it is stated "Strimling agrees that until 1945 his 'salary' allowance was to be limited to $2,600 per year".

But Strimling's testimony as a witness on his own behalf was that for each of the years 1943 and 1944 he drew a salary for himself of $3,600.00 and allowed only $2,600.00 to Stone. He caused the books to reflect that the amount of $3,600.00 accrued as salary to him and only the amount of $2,600.00 accrued as salary to Stone. He introduced in evidence his statement of accounts of the business for 1943 and 1944, Exhibit HH, purporting to show the net sales per audit, Strimling's investment and the 8% interest thereon, profits, weekly payments to Stone, total payments to Stone, and also under the heading "Strimling yearly payments claimed as salary per books $3600" in each of the two years. In attempted refutation of this apparently unequivocal declaration that he had al-

lowed himself a greater salary than he had allowed to Stone, Strimling said that there had been expenses of the business which he had paid and caused to be charged to himself personally instead of to the business and because of that he had increased the salary item for himself in each of the two years. He claimed to have increased it by less than a fair proportion of the business expenses with which he had charged himself personally.

But it appeared to the trial court that Strimling's personal assumption of the alleged expenses and his payment and recording of them on the books as personal and not Western Manufacturing Company expenses, amounted to voluntary payments constituting no defense to his crediting himself with and drawing $3,600.00 salary for himself against the $2,600.00 salary accorded Stone. On that ground the court excluded documentary evidence and offers of proof concerning the items of expense relied on by Strimling.

■■ The issues as to these two counts of the complaint, although they were obviously different from those considered as to the other counts, were not treated separately in the instructions. The amounts involved in them were small compared to the amounts in the other counts and we do not find clearly and plainly pointed out to us any error which justifies reversal of the judgment in respect to them. That voluntary payments knowingly made in intentional relinquishment of a known right may not be recovered back in an action at law is general law and not contrary to that of Minnesota. " 'If a man chooses to give away his money, or to take his chances whether he is giving it away or not, he cannot afterwards change his mind' ". Pettibone v. Cook County, 8 Cir., 120 F.2d 850, 856. See also De Graff

v. Board of County Commissioners, 46 Minn. 319, 48 N.W. 1135; State v. Wells, 127 Minn. 252, 149 N.W. 286; Peebles & Co. v. Sherman, 148 Minn. 282, 181 N.W. 715; Pure Oil Co. v. Tucker, 8 Cir., 164 F.2d 945. The trial court appears to have based its rulings thereon and no error is found in respect to them. The judgment as to counts 1 and 2 must be affirmed.

■ As to Strimling's counterclaims, it appeared to the trial court from the evidence that the alleged overpayments Strimling had made to Stone from year to year for which Strimling sought recovery were not made "through excusable inadvertence and mistake", as he alleged in his pleading of counterclaims, but it was shown that the business had been very profitable and the alleged overpayments were shown by Strimling's own undisputed testimony to have been voluntary payments which he made with full knowledge and understanding at the time he made them that he was not obligated and could not be compelled to make them. Much of the documentary and other testimony he offered to support the counterclaims was properly excluded because it was based entirely on voluntary payments which, as stated, may not be recovered back under applicable Minnesota law.

The judgment as to the counterclaims is affirmed. It is affirmed as to counts 1 and 2 of the complaint. It is reversed and remanded for new trial not in conflict with this opinion as to counts 3, 4, 5, and 6 of the complaint. The numerous questions raised and argued by counsel which are not here discussed are not decided. They must be dealt with on a new trial as the trial court is advised.

Affirmed in part. Reversed and remanded for new trial in part.